UNITED STATES ex rel. COQUARD v. INDIAN GRAVE DRAINAGE DIST. et al.

(Circuit Court of Appeals, Seventh Circuit. March 23, 1898.)

No. 444.

1. FEDERAL COURTS—FOLLOWING STATE STATUTES—TRIALS AT LAW WITHOUT JURY.

The Illinois statute, providing that, in an action at law tried without a jury, propositions of law may be submitted to the court, and a ruling required, in order to lay a foundation for a writ of error, is not made applicable to trials in the federal courts by Rev. St. § 914, since the practice in such cases is prescribed by sections 649, 700.

2. APPEAL AND ERROR—ASSIGNMENTS OF ERROR.

Under rule 11 of the circuit court of appeals, assignments of error upon admission and rejection of evidence must set forth the full substance of the evidence admitted and of documentary evidence rejected. Where a witness is not permitted to answer a question, the full substance of the expected answer should be set out. This may be done before the conclusion of the trial, if not required at the time the question was overruled.

3. SAME.

Every separate exception intended to be urged as error should be made the subject of a distinct specification in the assignment of errors, and no specification should embrace more than one exception.

4. MANDAMUS—PAYMENT OF MONEY BY PUBLIC OFFICER.

To entitle a judgment creditor to mandamus against the treasurer of a drainage district for the payment to him of a sum of money, there must be in the hands of the treasurer an amount legally due, and there must have been a specific demand therefor by the creditor, and a refusal to pay it.

5. SAME—EQUITABLE RIGHT.

A holder of a judgment recovered on bonds and coupons against a drainage district of Illinois claimed that money in the hands of the district treasurer was applicable to his judgment, because, in previous years, the treasurer had received coupons from other bondholders in payment of assessments, whereby plaintiff alleged that he became entitled to the whole of the assessments of subsequent years until he had received payment proportional to those of the other bondholders. *Held*, that this claim was founded on an equitable, rather than a legal, right, and therefore could not be enforced by mandamus.

In Error to the Circuit Court of the United States for the Southern District of Illinois.

This proceeding was commenced by petition for a writ of mandamus, filed on April 16, 1896, after the decision of this court in the case of Coquard v. Drainage Dist., 34 U. S. App. 169, 16 C. C. A. 530, and 69 Fed. 867. The facts there stated are substantially the same as those disclosed in this record.

The original petition in this case alleged the recovery by the relator, on April 24, 1892, of a judgment against the Indian Grave Drainage District for the sum of $10,709.73, based upon bonds and coupons from bonds issued by the commissioners of the district, the failure and neglect of the district to provide from time to time by taxation for the payment of interest as it became due on the bonds, the possession by the treasurer of the district of a sum of money exceeding $1,500, which had been in his hands for the past two years, and which ought

by right to be turned over and applied to the payment of the relator's judgment. The prayer of the petition was that process be issued to the Indian Grave Drainage District, to Gerhard G. Arends, treasurer, and to L. H. A. Nickerson, H. H. Cober, and Henry Misser, commissioners thereof, returnable, etc.; that they be required to answer, and that upon final hearing a writ of peremptory mandamus be ordered, requiring the district, through its corporate authorities, to pay the said judgment with interest and costs, and, in case of insufficiency of funds in the treasury for the purpose, to cause a special tax to be levied, etc.; and that other proper relief be awarded.

A demurrer to this petition having been sustained, an amendment was added, which, after a general averment of the corporate character of the principal respondent, alleges, in substance, that there is now in the treasury of the district $2,770 collected from the first and second assessments, of which $1,683 had been collected from the second assessment, and remained subject to the relator's rights in this proceeding; that the entire bonded indebtedness of the district, except that belonging to the relator, was represented by George Edmunds, as trustee, who had intervened in the cause; that the holders of such indebtedness, except the relator, had joined in a settlement and compromise, and had accepted new and other bonds in lieu of the first bonds issued to them,— the new bonds being "subservient to the judgment and bond holdings of relator"; and that, notwithstanding the written demand therefor made, as alleged in the original petition, the treasurer and commissioners had refused to pay the judgment of the relator, and no part of the same had been paid.

A second demurrer having been sustained, a second amendment was added, which is long and so involved in expression as to be difficult of comprehension; but, after first stating that the relator claims a share of all the moneys now in the treasury of the district, proportionate to the amount of his share of the bonded indebtedness, it alleges that since July 1, 1886, continually from year to year, the commissioners and treasurer of the district had collected a large portion of the assessments, the amounts collected being unknown to the relator, but believed to be many thousand dollars, and to exceed the sum due him, but, disregarding their duty to pay his demand, and contriving to hinder and defraud him of his proper share of the amounts collected, "did pay unto the bond holdings of other bondholders a large proportion of the receipts collected by said district in coupons due by said district on the bonded indebtedness, in this wise, to wit." Here follow three successive statements, the first two of which seem to be summarized in the third, which is "that the said district, through its officers, did accept interest coupons of all the outstanding indebtedness against said district (with the exception of your relator's coupons and holdings) in payment of taxes due from the land subject to taxation within said district, by reason of the bonded indebtedness created by said district, and whereby the said district, through its officers, agents, and servants, accepted such coupons from the bondholding and compromised indebtedness due from said district, in exclusion to the rights of your relator, and whereby the said other bondholders paid themselves an amount of money largely in excess of the amounts of their distributive share, and by means whereof the relator now complains that the commissioners and treasurer of said district have deprived said relator from participating or recovering the amount now in the treasury of his demand as hereinbefore set forth, when such taxes should have been paid in money of the United States." It is further averred "that by reason of the premises all of the moneys now in the hands of the treasurer of said district belong to, and should of right be ordered to be paid unto, your relator," and "that there are no other bondholders entitled to the proceeds now in the hands of the treasurer of said district, for the reason that, with the exception of the relator, all other bondholders have by compromise and adjustment received all of the moneys lawfully due them, and that the moneys now in the hands of the treasurer of said district belong to, and of right should and ought to be paid to, the relator."

George Edmunds, having been permitted to appear, answered, setting up facts on which, as trustee for all the bonds secured upon the first assessment, and for all secured by the second assessment, except those held by the relator, amounting to $20,500, and one for $500, held by a resident of Quincy, Ill., he claimed that the relator had received his pro rata share of the moneys collected, and that the sums in the hands of the treasurer should be paid over to him.

85 F.—59

The drainage district and its officers answered, denying the sufficiency of the petition, and alleging, among other things, that the coupons entering into the judgment of the relator were from bonds charged against the second assessment, "and were and became due for the years 1886, 1887, 1888, and 1889, and were and are a lien upon the installments of said second assessment, and the actual interest upon said second assessment, for those several years, respectively, as the bonds and coupons entering into that judgment, respectively, came due during those several years"; that of all moneys received from any source on account of the second assessment, up to the commencement of this proceeding, the relator had received his due proportion; that the only moneys remaining in the treasury of the district at the commencement of the action, being the moneys mentioned in the petition and amendments thereto, were collected on account of interest for the year 1892 and subsequent years, and are the pro rata part of such interest on the second assessment as belongs to other coupons of bonds represented by the intervener, George Edmunds; and that during no one of those years—1892 and later—has any coupon or coupons of bonds of the district been paid or received upon any assessment, and all payments thereon have been in lawful money.

Trial by jury was waived by written agreement, and the court, having made only a general finding, entered an order that the petition of the relator be dismissed, that the sums in the district treasurer's hands be paid to Edmunds as trustee, and that Coquard pay the costs.

The assignment of errors contains the following specifications: (1) The circuit court admitted upon the trial improper evidence on the part of the defendant and intervening petitioner; that is to say, permitted defendant and intervening petitioner to prove that they had expended and paid out funds of said district to various parties without any authority of law. (2) The circuit court improperly refused to admit proper evidence, offered by petitioner, wherein petitioner attempted to prove that the defendants received large sums of money, and now in the hands of the treasurer of said district, which should be distributed and paid over to petitioner. (3) The circuit court erred in refusing to petitioner to prove that the defendants received and accepted from intervening petitioner coupons in discharge of and. in payment of petitioner's indebtedness, to the exclusion of the rights of petitioner, as set up in said petition. (4) The circuit court improperly decided the issue in the case on the law and the evidence, and the petition herein should have been sustained, and the rights claimed by intervener in his petition should have been denied. (5) The decision of the circuit court herein made is contrary to the law and the evidence in the case. (6) The circuit court erred in dismissing the petitioner's petition. (7) The circuit court erred in decreeing in favor of intervening petition.

It is objected that the first, second, and third specifications are not entitled to consideration, because the evidence referred to in each is not set out, as required by rule 11 (21 C. C. A. cxii., 78 Fed. cxii.) of this court, and because the bill of exceptions in the record does not purport to contain all the evidence, and that the other specifications are not such as can be considered.

George Edmunds, intervening petitioner, pro se.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The statute of Illinois which provides that, in an action at law tried without a jury, propositions of law may be submitted to the court, and a ruling required, in order to lay a foundation for a writ of error, is not made applicable to trials in the federal courts by section 914 of the Revised Statutes of the United States, because the practice in those courts in such cases is prescribed by sections 649 and 700 of the Revised Statutes. Ex parte Fisk, 113 U. S. 713, 5 Sup. Ct. 724; Distilling & Cattle Feeding Co. v. Gottschalk Co., 24 U. S. App. 638, 13 C. C. A. 618, and 66 Fed. 609. It is not material therefore, in this case, that

propositions of law were not submitted, or that exception was not taken to the judgment rendered, if otherwise any question is properly preserved for consideration. There being only a general finding, it is well settled, under section 700, that only such questions can be made the subject of review as arose upon "the rulings of the court in the progress of the trial of the cause." Crawford v. Foster (decided Jan. 3, 1898) 84 Fed. 939; Fourth Nat. Bank v. City of Belleville, 27 C. C. A. 674, 83 Fed. 675, and cases cited. It follows that the fourth, fifth, sixth, and seventh specifications of error must be disregarded, and, if there is any question properly presented for consideration, it is whether evidence was improperly admitted or rejected, as alleged in either the first, second, or third specification.

The requirement of rule 11 (21 C. C. A. cxii., 78 Fed. cxii.) of this court is that, when the error alleged is to the admission or to the rejection of evidence, the assignment of errors shall quote "the full substance of the evidence admitted or rejected." There need be no difficulty in applying this rule literally to evidence admitted, whether documentary or oral. It is simply necessary to state its full substance in the specification of error. The same is true when the evidence rejected is documentary; but, when a witness is not permitted to answer a question, the quotation can be only of the full substance of the evidence which it was proposed to elicit, and the better practice is that the bill of exceptions should be made to show just what facts it was proposed to prove in answer to the question. This could be done even where it is not the practice to require a statement, at the time when a question is overruled, of the facts expected to be elicited. A statement, preferably in writing, made to the court before the conclusion of the trial, would be sufficient. There is some uncertainty, if not conflict, in the opinions of the supreme court in respect to the proper practice. In Railroad Co. v. Smith, 21 Wall. 255, 261, it is said:

"Whatever may be the rule elsewhere, to render an exception available in this court it must affirmatively appear that the ruling excepted to affected, or might have affected, the decision of the case. If the exception is to the refusal of an interrogatory not objectionable in form, the record must show that the answer related to a material matter involved; or, if no answer was given, the record must show the offer of the party to prove by the witness particular facts, to which the interrogatory related, and that such facts were material."

This is applicable, in terms and in principle, alike to unanswered interrogatories in a deposition and to unanswered questions to a witness on the stand; and in harmony with it are the decisions of the United States circuit court of appeals in the Fifth and Eighth circuits, in Turner v. U. S., 30 U. S. App. 104, 13 C. C. A. 445, and 66 Fed. 289, and American Nat. Bank v. National Wall-Paper Co., 40 U. S. App. 646, 23 C. C. A. 33, and 77 Fed. 85. But in Buckstaff v. Russell, 151 U. S. 626, 636, 14 Sup. Ct. 448, 452, after referring to Railroad Co. v. Smith, and other cases, which arose upon exceptions to parts of depositions, it was said:

"But this rule does not apply where the witness testifies in person, and where the question propounded to him is not only proper in form, but is so framed as to clearly admit of an answer favorable to the claim or defense of the party producing it. It might be very inconvenient in practice if a party, in order to take advantage of the rulings of the trial court in not allowing questions proper

in form and manifestly relevant to the issues, were required to accompany each question with a statement of the facts expected to be established by the answer to the particular question propounded. Besides,—and this is a consideration of some weight,—such a statement, in open court, and in the presence of the witness, would often be the means of leading or instructing him as to the answer desired by the party calling him. If the question is in proper form, and clearly admits of an answer relevant to the issues and favorable to the party on whose side the witness is called, it will be error to exclude it. Of course, the court, in its discretion, or on motion, may require the party in whose behalf the question is put to state the facts proposed to be proved by the answer. But, if that be not done, the rejection of the answer will be deemed error, or not, according as the question, upon its face, if proper in form, may or may not clearly admit of an answer favorable to the party in whose behalf it is propounded."

But, whatever the objections to requiring a statement in open court of the expected answer to an interrogatory, there is no reason why the statement should not be prepared and presented to the court during the progress of the trial, and shown in the bill of exceptions. The wholesome effect would be, first, to afford the court below an opportunity, either to justify its ruling by a fuller statement of facts in the bill, or to recognize and cure an error committed by granting a new trial; and, second, to restrict the plaintiff in error in the upper court to the exact position asserted in the court below. A practice which, while conforming to the letter and spirit of the rule, will promote the ends of justice, should be deemed to be established by the force of the rule itself without the aid of other authority.

The rule also requires "an assignment of errors which shall set out separately and particularly each error asserted and intended to be urged," and, if it be accepted as the plain meaning of this provision that there shall be in the assignment of errors a separate specification of each error intended to be urged, it will follow that every separate exception intended to be urged should be made the subject of a distinct specification in the assignment of errors. No specification, therefore, ought to embrace more than one exception. That is what was meant when, in Railroad Co. v. Mulligan, 34 U. S. App. 1, 14 C. C. A. 547, and 67 Fed. 569, it was said that "the same rule governs the saving of exceptions and the assigning of errors." The court, in its discretion, may waive a strict compliance, but the rule is an easy one, promotive of fairness to the trial courts, and of convenience as well as of just results in the final disposition of cases in the courts of appeals. A proper specification of error for the rejection of testimony would be:

"The court erred in overruling the following question, propounded to the witness A. B. [here a statement of the question], to which the witness was expected to answer as follows [here a quotation of the full substance of the answer]."

The first of the specifications now under consideration has reference to evidence admitted, and there can be no question of its failure to comply with the rule. The second specification, in effect, is that the court erred in refusing to admit proper evidence to show that the money in the hands of the treasurer of the drainage district should be paid over to the relator. Whether the relator was entitled to that money was substantially the issue in the case, and the assignment is little more specific than if it alleged broadly the refusal of the court to admit evidence offered by the relator. The third specification embraces but one phase of the issue, but, like the other, fails to show what the evidence was

which was rejected, and whether it was oral or documentary, or both; and, without looking to the brief, it is impossible to know what the ruling was which it is sought to bring under review. See Grape Creek Coal Co. v. Farmers' Loan & Trust Co., 24 U. S. App. 38, 12 C. C. A. 350, and 63 Fed. 891. The brief, too, in so far as it refers to the exclusion of evidence, is confined to the inquiry:

"Was it proper for the court below to deny relator the right to prove that the defendants received and accepted from the intervening petitioner, George Edmunds, coupons or bonds in discharge of and in payment of intervener's bond and coupon indebtedness, to the exclusion of the rights of the petitioner as set up in said petition and attempted to be proved by oral and documentary evidence adduced and offered?"

Aside from any question of the sufficiency of the specifications of error, we are of opinion that the judgment below ought not to be disturbed. Mandamus is a remedy, not for the adjustment of equities, but for the enforcement of a definite and certain legal right, and will not be used when the right to be vindicated is doubtful. It will be used against public officers to compel performance of an administrative duty, and in this case would have been a proper remedy if there had been in the hands of the treasurer of the drainage district a sum of money legally due the relator, which, on proper demand, the treasurer had refused to pay over to him. There must have been a specific demand. "It must be shown that there has been a distinct demand of that which the person moving for the writ desires to enforce." Wood, Mand. 93. The demand of the relator in this case was for the payment of his entire judgment, when, as the evidence shows without dispute, he not only knew that there was and had been no such amount of money in the treasury, but that of the sums actually collected upon the second assessment, in which alone he had an interest, he had, as late as November, 1895, received and, without protest or reservation, receipted for a share proportionate to the number and amount of his bonds compared with the whole number and amount of bonds secured by that assessment. Yet, by the second amendment to his petition, after first asserting a claim only for a proportionate share, he concludes with the inconsistent claim that, by reason of coupons from other bonds having been received in payment of taxes levied under the second assessment, he is entitled to the remaining sums in the hands of the treasurer, notwithstanding he had accepted a prorated share thereof.

Aside from this uncertainty of the petition, if the proof offered had been admitted, it would have shown that coupons had been received in payment of interest upon the second assessment only in the years prior to 1892, and that the money remaining in the treasury (after the receipt by the relator of the proportion thereof corresponding to the number of his bonds) was collected on account of interest on the assessment for the year 1892 and later years; and the question would have been whether, by reason of the receipt by the treasurer of the coupons from other bonds in payment of the taxes extended for prior years, the relator, whose coupons had not been so received, became entitled to take the whole of the collections on the levies of later years until the amounts so received by him should be equal proportionately to the payments realized by the holders of the coupons so received by the

treasurer. On that basis the right asserted is equitable, rather than legal, and the suggestion in the brief for the plaintiff in error that this proceeding to establish and enforce it by mandamus is "upon the basis and theory" of the opinion of this court (34 U. S. App. 175, 16 C. C. A. 530, and 69 Fed. 867) is unwarranted. The proposition there advanced was that mandamus would be the appropriate remedy against "the further acceptance of coupons in discharge of taxes levied for the payment of interest on the second assessment." This petition shows no necessity for the writ in that direction, and can be regarded as brought only for the purpose of asserting a right to, and obtaining possession of, the money in the hands of the treasurer of the district when the proceeding was commenced.

The judgment below is affirmed.