## BALLIET v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 21, 1904.)

No. 1,886.

1. CRIMINAL LAW—WITNESSES—EXAMINATION—NOTICE TO ACCUSED.

Since Rev. St. U. S. § 1033 [U. S. Comp. St. 1901, p. 722], providing that a person indicted for treason or a capital offense shall be furnished with a list of witnesses, to be produced three days before the trial on the indictment for treason and two days before the trial of any other capital cases, limits such right to trials for treason and capital offenses, it impliedly authorizes the examination of witnesses in trials in the federal

---

¶ 1. See Criminal Law, vol. 14, Cent. Dig. §§ 1420, 1422.

courts for lesser crimes without such witnesses being previously disclosed to accused.

**2. SAME—FEDERAL COURTS—STATE LAW—ADOPTION—PRACTICE—CUSTOM.**

A federal court in 1859 adopted certain chapters of the Code of the state in which it was sitting relating to criminal procedure, requiring the names of all witnesses, on whose evidence the indictment is found, to be indorsed on the indictment, and providing that the county attorney should not introduce any witness who was not examined before a committing magistrate or the grand jury, etc. In 1893 the practice in such court was changed so as to authorize the government to introduce testimony of witnesses other than those whose names were indorsed on the indictment, without giving previous notice to accused. *Held*, that a defendant subsequently indicted was not entitled to claim the benefit of the former practice.

**3. APPEAL—ASSIGNMENTS OF ERROR—OBJECTIONS TO TESTIMONY.**

Where neither the assignment of errors nor the brief of counsel on appeal quotes the substance of testimony objected to, in full, as required by Court of Appeals rules 11 and 24 (89 Fed. vii, xi, 32 C. C. A. xiv, xxiv), and the pages of the record where the testimony is reported are not referred to, such objections will not be reviewed.

**4. SAME—BILL OF EXCEPTIONS—EXHIBITS—OBJECTIONS.**

Where objections to the admission of written and printed exhibits are relied on on appeal, it is improper to describe them in the bill of exceptions merely by date and general import, but they should be set out in full at the places where they appear to have been offered and read.

**5 USE OF MAILS—SCHEME TO DEFRAUD—EVIDENCE—LETTERS—ADVERTISING MATTER.**

Since, in a prosecution for use of the mails in furtherance of a scheme to defraud, in violation of Rev. St. U. S. § 5480 [U. S. Comp. St. 1901, p. 3696], by inducing the public to purchase worthless mining stock, the gist of the offense is fraud, letters and telegrams principally written by defendant, showing that he exercised absolute control of a mining company, the stock of which he was engaged in selling, some of such letters containing false and fraudulent representations inducing a sale of stock, and other false and fraudulent advertisements in newspapers and magazines, printed as news and paid for at high rates as advertisements, which pretended to give a true account of defendant's achievements as a mining expert, and calculated to deceive the public, were admissible.

**6 SAME—WITNESSES—DEFENDANT—CROSS-EXAMINATION—MATERIAL MATTERS—FAILURE TO EXPLAIN—PRESUMPTIONS.**

Where, in a prosecution for using the mails with intent to defraud, defendant became a witness in his own behalf, as authorized by Act March 16, 1878, c. 37, 20 Stat. 30 [U. S. Comp. St. 1901, p. 660], providing that a person charged with an offense shall at his own request, but not otherwise, be a competent witness, and that his failure to make such request shall not create any presumption against him, an instruction that, defendant having gone on the stand, if he had not fully explained or had not explained matters material to the issues which were naturally within his knowledge, the jury might consider such failure as a circumstance tending to show that the facts, if explained, would bear out the contention of the government, and his failure to explain them, or give a truthful explanation, was against him, was erroneous as misleading, and as placing an undue burden of proof on defendant.

In Error to the District Court of the United States for the Southern District of Iowa.

F. W. Lehmann (S. F. Balliet, on the brief), for plaintiff in error.

Lewis Miles, U. S. Atty., for defendant in error.

Before SANBORN, THAYER, and HOOK, Circuit Judges.

THAYER, Circuit Judge, delivered the opinion of the court.

This is a criminal action which was brought by the United States against Letson Balliet for an alleged violation of section 5480 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3696]. As no questions are raised in this court respecting the sufficiency of the indictment, it will suffice to say, generally, that two indictments were found against Letson Balliet, the plaintiff in error, which were subsequently consolidated for trial; that the indictments charged, in substance, that Letson Balliet, the plaintiff in error, had devised a scheme and artifice to defraud certain persons, which was to be consummated by opening correspondence with them by means of the United States mail; that his scheme was to pretend that he was the owner of the White Swan Gold Mine, located at Baker City, in the state of Oregon, and to induce persons to subscribe and pay for stock in said mines by false representations as to the richness, value, condition, and output of the mines, with intent to convert the money so obtained from the sale of stock to his own use; and that in furtherance of such scheme he deposited various letters, circulars, newspapers, etc., in the mail, which were addressed to certain persons, all of which contained various false representations concerning the value and condition of the mines, that were known to him at the time to be untrue. The trial of the consolidated indictments resulted in the production of a great mass of evidence, oral and written, which tended to support the charge, and on the strength of which the accused was ultimately convicted.

In this court the accused seeks to obtain a reversal of the judgment below, because the names of certain witnesses who were allowed to testify in behalf of the government were not indorsed on the indictments prior to the trial, and because no notice was served upon the accused, in advance of the trial, that such persons would be produced as witnesses against him, also because incompetent testimony was introduced during the progress of the trial, and because the jury were misdirected. The record discloses that, by an order made by the District Court of the United States for the Southern District of Iowa in June, 1859, certain chapters of the Code of Iowa, relating to grand jurors and criminal procedure, were adopted and put in force in that District. Two sections of the local statute, which are now sections 5276 and 5373 of the Code of Iowa of 1897, that were so adopted and put in force, in substance, require the names of all witnesses on whose evidence an indictment is found to be indorsed thereon before it is presented in court, and also provide that the county attorney, in offering evidence in support of an indictment, shall not be permitted to introduce any witness who was not examined before a committing magistrate or the grand jury, and the minutes of whose testimony was not presented with the indictment, to the court, unless he shall have given the accused, at least four days before the commencement of the trial, a notice in writing stating the name, place of residence, and occupation of such witness, and the substance of what he expects to prove by him on the trial. It further appears that from and after the promulgation of the aforesaid rule, and up to the year 1893, it was the uniform practice in the federal courts for the Southern District of Iowa to indorse upon indictments found in those courts the names of witnesses who had testified before

the grand jury. In the year 1893, however, during the progress of a criminal trial in the United States Court for the Southern District of Iowa, it was decided that on the trial of a criminal case the United States could introduce testimony of witnesses, other than those whose names were indorsed on the indictment, without having given the four days' notice prescribed by the local statute; and continuously since that ruling was made it has been the custom and practice, in the trial of criminal cases in the Southern District of Iowa, to permit the United States to introduce in its testimony in chief, as witnesses, persons whose names had not been indorsed on the back of the indictment, and to do so without giving any previous notice whatsoever to the defendant. This practice, as the record discloses, has been uniform from the year 1893 down to the time when the trial in the case at bar took place.

In view of these facts, we conclude that the judgment below should not be reversed because some witnesses were allowed to testify on behalf of the United States whose names were not indorsed on the indictments, although no notice was given to the accused that such witnesses would be produced. Except when a person is indicted for treason or some capital offense (vide section 1033, Rev. St. U. S. [U. S. Comp. St. 1901, p. 722]), there is no provision found in the federal statutes requiring the accused in a criminal action to be furnished with a list of the witnesses who will be produced against him, or requiring the names of witnesses to be indorsed on the indictment; and the fact that a special provision is made for advising the accused of the names of witnesses who will be produced on trials for treason and other capital offenses warrants the inference that in prosecutions for other offenses against the laws of the United States it is unnecessary to advise the accused of the names of witnesses who will be sworn. The maxim, "Expressio unius est exclusio alterius," clearly applies. By virtue of section 1033 [page 722], supra, a person indicted for treason or a capital offense is entitled to be furnished with a list of witnesses to be produced, three days before the trial on an indictment for treason and two days before the trial in other capital cases, and, if the accused seasonably claims this right, it is error to put him on trial, and permit witnesses to testify against him, without furnishing him with a list. Logan v. United States, 144 U. S. 263, 304, 12 Sup. Ct. 617, 36 L. Ed. 429. But in the absence of some statute prescribing a contrary rule, there is neither error nor irregularity in permitting a witness for the government to be sworn in criminal cases, other than those above mentioned, whose name does not appear on the back of the indictment or has not been furnished to the accused. Thiede v. Utah Territory, 159 U. S. 510, 515, 16 Sup. Ct. 62, 40 L. Ed. 237. Waiving, on this occasion, any consideration of the question whether it was competent for the Circuit Court of the United States for the Southern District of Iowa to adopt a rule, as it appears to have done, which would operate to exclude as witnesses in criminal proceedings, other than capital cases, persons who were qualified to testify under the laws of the United States, because their names were not indorsed on the indictment or furnished to the defendant, we are of opinion that, even if it was competent for the court to prescribe such a rule, the rule was practically abrogated and annulled, nearly 10 years before the case at bar was tried,

by the same court which prescribed it, by the adoption of a contrary practice and by an uniform adherence to the contrary practice. The first ground of reversal is therefore untenable, and must be overruled.

The errors that are assigned because of the admission of incompetent evidence relate to two kinds of testimony: First, to oral testimony; and, second, to written and printed exhibits, consisting of letters, telegrams, circulars, and publications in various newspapers, which the defendant had caused to be printed and distributed by means of the mail. In so far as the assignments are addressed to oral testimony which was received on the trial, they will be ignored, because they are not assigned in conformity with rules 11 and 24 of this court (89 Fed. vii, xi, 32 C. C. A. xiv, xxiv), to which we have frequently alluded. Neither in the assignment of errors nor in the brief of counsel is the substance of the objectionable testimony quoted in full, as the rules require, nor are we referred to the pages of the record where the testimony is reported, so that we can find it conveniently without loss of time, and ascertain if a seasonable objection in due form was interposed when it was offered. Where this is not done, and the record, as in the present case, is lengthy, we will not consider objections to the admission or exclusion of oral testimony, as we have frequently decided. Lincoln Savings Bank & Safe-Deposit Co. v. Allen, 27 C. C. A. 87, 82 Fed. 148; City of Lincoln v. Sun Vapor Street Light Co., 8 C. C. A. 253, 59 Fed. 756; United States v. Indian Grave Drainage District, 29 C. C. A. 578, 85 Fed. 928. If counsel will not take the trouble to state the full substance of evidence which they claim to have been erroneously admitted, and point out the pages in the record where it can be found and examined, we may well assume that the alleged error is not material, and accordingly ignore it.

Concerning the written and printed exhibits which, as the plaintiff in error claims, were erroneously admitted in evidence, it is to be observed, in the first place, that some of them are not set out in full in the bill of exceptions, and, in the second place, that the objections which were made to the admission of all the exhibits were couched in the most general terms, the objection being that they were "incompetent, irrelevant, and immaterial." None of the exhibits are copied in the bill at the places where they appear to have been offered and read, but they are found elsewhere; some of them are copied in part only, while others are not copied even in part, but are described merely by their date and general purport. This method of preparing a bill of exceptions is subject to grave criticism, and the practice of making up a bill in that form ought to be discouraged, since it renders it impossible for an appellate court to determine readily what evidence was in fact admitted, what was its precise nature, and what may have been its bearing upon the issues in the case. Waiving these objections to the bill of exceptions, however, and conceding that the question whether these exhibits were properly admitted in evidence is before us in such a form that we can consider it, we have concluded that the question must be answered in the affirmative. The letters and telegrams in question were principally written by the defendant himself. They showed that he exercised absolute control over the affairs of the White Swan Mines Company, Limited, whose stock he was engaged in selling. They further

showed the manner in which he conducted the business of that company, and the use that he made of the money which he received from the sale of its stock. Some of the letters also contained representations that were made by the defendant for the evident purpose of inducing the sale of its stock. The other exhibits consisted principally of reports made by the defendant to stockholders of the White Swan Mines Company, Limited, and articles which the defendant had composed and caused to be published in certain newspapers and periodicals, among others, in the Chicago Inter-Ocean, the City Argus, of San Francisco, Ainslee's Magazine, and a monthly publication termed "The Mining News." Of these newspaper articles it is sufficient to say that they were paid for at a high rate, as advertisements, out of the funds which the defendant realized from the sale of stock, although the articles did not appear to be advertisements, but purported to contain legitimate items of news which the proprietors of the several publications had gathered in the ordinary way. They were of an exceedingly laudatory character. Some of them referred to the defendant as "The Mining King of Eastern Oregon," "The Cecil Rhodes of America," "Oregon's Bonanza King," "The New Star in Mining Circles," etc. These articles also pretended to give a true account of the defendant's wonderful achievements and rapid rise to eminence as a mining expert and developer of mining properties; they also contained glowing accounts of the richness and future prospects of the White Swan Mines. In a word, the articles in question were well calculated to excite the cupidity as well as to deceive credulous and ignorant people, thereby inducing them to invest their means in purchasing the stock which the defendant was engaged in selling. The testimony in the case also shows that the defendant had been exceedingly industrious in giving a wide circulation to these articles by mailing them to hundreds, if not thousands, of persons. The case was tried below upon the correct theory, namely, that it was incumbent upon the government to show that the defendant had concocted a scheme to defraud which was to be consummated by the use of the mails—that is, by entering into correspondence through the mail with certain persons—and that in execution of the scheme he had deposited in the mail the letters which were referred to in the indictment. In other words, the case proceeded upon the theory that fraud was the gist of the offense charged in the indictment, and that it must be made to appear that the defendant's purpose from the beginning was to sell a worthless stock by means of false representations, or a stock which was less valuable than it was represented to be, and to appropriate the proceeds, or a part thereof, to his own use. This being so, we are of opinion that all of the exhibits above mentioned were properly received in evidence to develop the defendant's purpose. The jury were entitled to consider all of the defendant's acts and declarations in connection with the exploitation of the White Swan Mines, both before and after the letters mentioned in the indictment were deposited in the mail, for the purpose of determining with what intent the defendant had acted. In no other way could his purpose be established. Besides, the exhibits in question contained so much of exaggeration, and were put forth in such a form, as though they contained well authenticated items of news, and with such a reckless disre-

gard of the truth, as would fairly justify the inference that they were intended to deceive, and were acts done in furtherance of a scheme to defraud by means of the mail. We think the trial court would have erred had it excluded the several exhibits.

We have next to consider whether the jury were misdirected, and only one alleged error of this sort is called to our attention. At the conclusion of a somewhat lengthy charge, the trial judge made this statement, to which an exception was duly taken:

"It has been suggested that I have overlooked one thing. I may say you may consider, in determining the question, the fact that the defendant having gone upon the witness stand, if he has not fully explained, or has not explained matters which are material to the issues in this case, and which are naturally within his knowledge, you may consider that as a circumstance tending to show that the facts, if explained, etc., would bear out the contention of the government, and his failure to explain them or give a truthful explanation is against him."

We have not been able to conclude that this instruction states a correct rule of law, or that the giving of it was not a material error. As we interpret this instruction, it means that, inasmuch as the defendant had elected to testify in his own favor, if while on the stand he had not fully explained all matters and things material to the issues in the case which the jury might think were naturally within his knowledge, then the jury might conclude that the facts, etc., if he had indulged in an explanation concerning them, would have borne out the contention of the government—that is, shown that he was guilty—and that his failure to explain was against him; that is, would justify a conclusion of guilt. This rule of law would put the defendant in a criminal case in a peculiar attitude, for if he takes the stand as a witness he must perforce explain every fact and circumstance which has been put in evidence against him, as tending to establish guilt, which a jury may deem material, and such as he could explain, at the risk of having them conclude, because of his silence as respects such facts and circumstances, that they are true and that he is guilty. If a defendant in a criminal case desires to take the stand and contradict some particular fact or circumstance that has been testified to, he cannot safely do so for fear of raising a presumption of guilt by his failure to explain other facts and circumstances in evidence which the jury may happen to regard as material and may think the accused could explain. The federal statute (Act March 16, 1878, c. 37, 20 Stat. 30 [U. S. Comp. St. 1901, p. 660]) provides, in substance, that a person charged with an offense "shall at his own request but not otherwise, be a competent witness. And his failure to make such request shall not create any presumption against him." When the defendant in a criminal case, in compliance with this statute, waives his constitutional privilege by taking the witness stand, he occupies the attitude of any other witness, and may be cross-examined like an ordinary witness, and to the same extent. Fitzpatrick v. United States, 178 U. S. 304, 315, 20 Sup. Ct. 944, 44 L. Ed. 1078. The federal statute does not, like the statutes of some states (vide Rev. St. Mo. 1899, § 2637), expressly provide that the examination of the accused shall be limited to the matters testified to on his direct examination, but we apprehend that it should be so limited, because that is the general rule which obtains in the federal courts relative to the cross-

examination of all witnesses except, when the rule is relaxed, as it sometimes is, on grounds of convenience or necessity. Houghton v. Jones, I Wall. 702, 706, 17 L. Ed. 503; Wills v. Russell, 100 U. S. 625, 626, 25 L. Ed. 607; Montgomery v. Ætna Life Ins. Co., 38 C. C. A. 553, 97 Fed. 913; Goddard v. Crefield Mills, 21 C. C. A. 530, 75 Fed. 818; Safter v. United States, 31 C. C. A. 1, 87 Fed. 329. It is also doubtless true that, when a defendant in a criminal case takes advantage of the statute and testifies in his own favor, the government may comment on his testimony and draw inferences therefrom as freely as if he were an ordinary witness and not the accused. It is only where the accused fails to testify that the statute prohibits unfavorable comment and attempts to create a presumption against him because he has not done so. Conceding this much, we are nevertheless of opinion that the instruction in question went too far, in that it required the accused to explain every fact and circumstance which had been introduced against him, and gave to them additional probative force because he had not done so or attempted to do so. Furthermore, it left the jury at full liberty to determine what matters which had been given in evidence were "material to the issues in the case," without directions on that point, and equal liberty to determine what matters were "naturally within his knowledge" and susceptible of explanation. The testimony in the case had taken a very wide range and covered a considerable period of time. While on the stand some facts and circumstances that had been introduced in evidence may have been overlooked by the accused or by his counsel, and he may not have been interrogated with respect thereto for that reason, or they may have been regarded as of no importance, or the circumstances may have been of a character which admitted of no further explanation, being in themselves such circumstances as the jury could ignore or draw such inferences therefrom as they thought proper. And yet the instruction was of a nature which permitted the jury to draw unfavorable inferences against the accused, because in the course of his examination he had not alluded to every fact and circumstance already in evidence, and given an explanation thereof consistent with his innocence. We are satisfied that the instruction cast an undue burden on the defendant, and that it was also misleading. Moreover, we are not able to say with certainty, as we must be to uphold the verdict, that the defendant was not prejudiced by the instruction.

The judgment below is accordingly reversed, and the case is remanded for a new trial.

SANBORN, Circuit Judge (concurring). I concur in the result, and in the opinion in this case, with this exception: The opinion contains the statement that it is the general rule in the federal courts relative to the examination of all witnesses, except when the rule is relaxed, as it sometimes is, on grounds of convenience or necessity, that the cross-examination must be limited to the matters testified to upon the direct examination of the witness. I concede the general rule, but I do not understand that it is discretionary with the federal courts to relax the rule, on the ground of convenience or necessity, so far as to permit a cross-examiner to cross-examine a witness, produced by his opponent,

upon subjects not germane to those upon which he was examined in chief. Resurrection Gold Mining Co. v. Fortune Gold Mining Co. (C. C. A.) 129 Fed. 668; Houghton v. Jones, 1 Wall. 702, 706, 17 L. Ed. 503; Montgomery v. Ætna Life Ins. Co., 97 Fed. 913, 916, 38 C. C. A. 553, 557; Safter v. U. S., 87 Fed. 329, 330, 31 C. C. A. 1, 2; Mine & Smelter Supply Co. v. Parke & Lacy Co., 107 Fed. 881, 884, 47 C. C. A. 34, 36; 1 Greenleaf, Ev. § 445; Hopkinson v. Leeds, 78 Pa. 396; Fulton v. Bank, 92 Pa. 112, 115. A rule which may be relaxed by the court when in its opinion it is necessary or is convenient to relax it is no rule at all. Such an exception is the abrogation of the rule, because it leaves its controlling force and effect in every case to the discretion of the trial court. In my opinion the rule has not been so abrogated by the federal courts, and it ought not to be so destroyed. This rule rests upon a sound reason, which varies not, at the discretion of the court, by reason of convenience or necessity. It exists because a witness during his cross-examination is the witness of the party who calls him, and not the witness of the party who cross-examines. Wilson v. Wagar, 26 Mich. 452, 458; Campau v. Dewey, 9 Mich. 381. The cross-examiner has the right to bind his opponent by the testimony of the witness upon cross-examination relative to every subject concerning which his opponent examined him in the direct examination. But he has no right to bind his opponent by the testimony of the witness during the cross-examination upon subjects relative to which his opponent did not examine him. If he would examine the witness upon such subjects, he may and he must make him his own witness, and stand sponsor for the truth of his testimony. It is discretionary with the court to permit the cross-examiner to do this at the time he is conducting the cross-examination, because the time and the manner of the trial are within the discretion of the court. It is discretionary with the trial court to permit leading questions to be put to a hostile witness upon his direct examination. But in the federal courts the line of demarkation which limits a rightful cross-examination is clear and well-defined. It is the line between subjects relative to which the witness was examined upon the direct examination and those concerning which he was not required to testify. It exists because within that line the party who calls the witness stands sponsor for the truth of his testimony, while without that line he does not. It does not vary with any convenience or necessity of court or counsel, because no convenience or necessity can be conceived of which would not enable the cross-examiner to make the witness his own and take the chance of his testimony. For these reasons I adhere to the general rule upon this subject, but am unable to concede the correctness of the exception thereto stated in the opinion.