## KINSER v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 29, 1916.)

No. 4502.

1. CRIMINAL LAW ☜1169(5)—HARMLESS ERROR—ADMISSION OF EVIDENCE— CURE BY STRIKING OUT.

Error in admitting evidence, which was not specially prejudicial, was cured by striking the testimony from the record before the witness left the stand.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3141; Dec. Dig. ☜1169(5).]

2. CRIMINAL LAW ☜696(1)—EVIDENCE—MOTION TO STRIKE.

Where a witness, in reply to a question whether he knew who paid the prosecuting witness' fare, answered that defendant did, which testimony defendant moved to strike, as not responsive to the question, and no foundation being laid for it by showing his means of knowledge, and the court overruled the motion, with the statement that the defense could test it on cross-examination, but the cross-examination did not show that he did not have the knowledge, and the motion to strike was not renewed at the end of the cross-examination, there was no error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1639; Dec. Dig. ☜696(1).]

3. WITNESSES ☜391 — EXAMINATION — CROSS-EXAMINATION — IMPEACHING WITNESSES.

A witness who testified to contradictory statements made by the prosecuting witness can be cross-examined as to whether he communicated such statements to defendant, and as to what he communicated.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1248; Dec. Dig. ☜391.]

4. CRIMINAL LAW ☜1170½(6)—HARMLESS ERROR—ADMISSION OF EVIDENCE— CURE BY INSTRUCTION.

Error in permitting improper cross-examination of an impeaching witness was cured by a charge that it was incompetent, except as to testimony that the contradictory statements were communicated to defendant, that it was stricken from the record, and that the jury were admonished not to consider it.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3134; Dec. Dig. ☜1170½(6).]

5. CRIMINAL LAW ☜371(9)—EVIDENCE—COMMISSION OF OTHER OFFENSES— INTENT.

In a prosecution for violating the White Slave Act (Act June 25, 1910, c. 395, 36 Stat. 825 [Comp. St. 1913, §§ 8812–8819]), where the defense contended that there was no evidence that defendant furnished the transportation with the intention that the prosecuting witness should engage in prostitution, it was not error to permit the government to show that

defendant had brought other women into the state for the purpose of prostitution.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 830, 831; Dec. Dig. ☞371(9).]

6. CRIMINAL LAW ☞1168(2)—REVIEW—DISCRETION OF COURT—ORDER OF PROOF—REBUTTAL.

Error by the trial court in holding competent evidence admissible as rebuttal, but not in chief, is not reversible, since the order of the evidence is wholly within the trial court's discretion.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3124, 3124½, 3129–3136; Dec. Dig. ☞1168(2).]

7. CRIMINAL LAW ☞1168(2)—HARMLESS ERROR—REBUTTAL EVIDENCE—CURE.

Error, if any, in admitting evidence competent in chief as rebuttal was cured by permitting defendant in surrebuttal to introduce evidence as fully as if the government's case in chief had just closed.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3124, 3124½, 3129–3136; Dec. Dig. ☞1168(2).]

8. CRIMINAL LAW ☞1178—APPEAL—BRIEF—SPECIFICATION OF ERRORS.

Under Circuit Court of Appeals Rules for the Eighth Circuit, rule 24 (188 Fed. xvi, 109 C. C. A. xvi), requiring counsel for plaintiff in error to file briefs containing, among other things, a specification of the errors relied on, which shall state specifically the errors to be argued, and a brief argument, with reference to the pages of the record, and providing that errors not specified according to the rule will be disregarded, but that the court may, at its option, notice a plain error not assigned or specified, the court will not consider alleged errors in permitting accused as a witness to be cross-examined beyond the scope of his examination in chief, where there was no specification of errors in the brief for accused, and no reference to the pages of the record on which the testimony can be found, and where the evidence leaves no room for doubt as to defendant's guilt.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3011–3013; Dec. Dig. ☞1178.]

In Error to the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

William C. Kinser was convicted of violating the Mann White Slave Act, and he brings error. Affirmed.

Edward E. Wagner, of Sioux Falls, S. D. (John E. Tipton, of Geddes, S. D., and Gamble, Wagner & Danforth, of Sioux Falls, S. D., on the brief), for plaintiff in error.

Robert P. Stewart, U. S. Atty., of Deadwood, S. D. (Edmund W. Fiske and George Philip, Asst. U. S. Attys., both of Sioux Falls, S. D., on the brief), for the United States.

Before HOOK and SMITH, Circuit Judges, and REED, District Judge.

SMITH, Circuit Judge. The defendant, William C. Kinser, was indicted under White Slave Act June 25, 1910, c. 395, 36 Stat. 825 (Comp. St. 1913, §§ 8812–8819). The indictment was in four counts. The defendant was tried and convicted on the second count, and acquitted upon the others, and, having been sentenced on the second count, brings error.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Count 2 of the indictment charged that the defendant—

"did knowingly, willfully, and feloniously cause to be transported in interstate commerce from Sioux City, in the state of Iowa, to and into Geddes, in the state of South Dakota, upon and over the route of the Chicago, Milwaukee & St. Paul Railway Company, a corporation, then and there being a common carrier, operating a line of railway as such and engaged in interstate commerce between the said Sioux City, in the state of Iowa, and the said Geddes, in the state of South Dakota, one certain woman, to wit, Frances Wilmott, with the intent and purpose then and there on the part of him, the said William C. Kinser, to induce, entice, and compel her, the said Frances Wilmott, at said Geddes, in the state of South Dakota, to become a prostitute and to give herself up to debauchery and to engage in other immoral practices."

Without reference for the present to whether all of the evidence was admissible, it showed that the defendant was conducting a hotel at Geddes, S. D., known as the Padley Hotel. The latter part of July, 1914, he either wrote or telephoned to the Fritz Stavrum Employment Agency at Sioux City to send him a cook and chambermaid. The agency sent both employés, the chambermaid being Mrs. Frances Wilmott. An employé of the employment agency bought a ticket for Mrs. Wilmott from Sioux City, Iowa, to Geddes, S. D., over the line of the Chicago, Milwaukee & St. Paul Railway, and she traveled on that ticket to Geddes. After her arrival in Geddes the defendant refunded the expense of her ticket to the employment agency. She testified that about 11 o'clock in the forenoon of her second day at Geddes Mr. Kinser came to her in room No. 11 and said:

"'I have a couple of live wires down stairs, if you think you can handle them.' I said, 'I don't quite catch your meaning.' He said, 'You can see by the hotel that I am not doing business enough here to pay you wages;' he says to me, 'If you want extra money, you will have to get your money from the men;' and he went on and told me the price that I was to charge, providing that I did, and he said it would be $2 a trick for a single trick or $5 for the whole night. He said to keep the money up to $6 a week for myself; the house was to get a dollar out of every trick I turned, but I was to keep the dollar until I had taken in my $6. He said he himself would send up men to my room, the ones he wanted in particular—traveling men. After this statement by Mr. Kinser about 1 o'clock that day men came to my room and I had intercourse with them. I had no funds of my own. I was there just five weeks, and the same practice was engaged in, not very often. I got money and left there. These men paid me according to the prices fixed by Mr. Kinser. Mr. Kinser did not pay me any wages for services rendered for him for the five weeks as chambermaid. The defendant said, if I was in fear that I was going to get into trouble, to tell him, and he would help me out."

[1] The first assignment of error is with reference to the admission of certain evidence by the witness Ola Meyers, but just before she left the stand the court struck all her testimony from the record, except the statement that she received a check and its identification and turned it over to Mr. Stavrum. Her evidence was not specially prejudicial, and this order striking it out was sufficient in any event to cure any error that had been made in admitting it.

[2] The second assignment is that Fritz Stavrum was asked:

"Q. And do you remember, after she went, as to who paid her fare, if you know?"

To which he replied:

"A. Mr. W. C. Kinser paid her fare."

Defendant moves to strike out this answer as not responsive to this question, no foundation being laid for it, the means of knowledge is not shown.

"The Court: I thing he may answer. You can test him with cross-examination."

Upon its face the question propounded to this witness was not subject to the objection made, and no cross-examination of him revealed otherwise, and no motion of a similar character was made at the end of the cross-examination.

[3, 4] Charles W. Bundy was called by the defendant to impeach Frances Wilmott. He testified to a conversation with her and was then interrogated on cross-examination whether he had communicated this conversation to Kinser and just what had been so communicated. Permitting this cross-examination is assigned as error in the twenty-second assignment. We see no objection to the line of cross-examination, but at its conclusion the court, upon its own motion, instructed the jury that the testimony was incompetent, except that he did communicate the conversation with the girl to Kinser, and stated that any further answers were entirely incompetent to the development of the testimony,

"And your attention is called to the fact that something was mentioned in that conversation with reference to pulling the house. All of that is stricken from the record, and you are admonished not to consider it, and to exclude it entirely from the consideration of this witness' testimony."

This certainly cured the error, if any, in the admission of the evidence.

[5] The government in chief called Esther King, who was sent by the Fritz Stavrum Employment Agency from Sioux City to the Padley Hotel at Geddes to act as a waiter, and sought to show by her that shortly after her arrival she was instructed substantially as Mrs. Wilmott claimed she was, but the court sustained an objection. At the close of the government's case in chief the defendant filed a motion for a directed verdict for the following, among other, grounds:

"4. There is no evidence in this case that the defendant procured or furnished transportation for said Frances Wilmott to go in interstate commerce from Sioux City, Iowa, to Geddes, S. D., with the intention that she should engage in prostitution or other immoral practices."

This motion was overruled. The court allowed Esther King in rebuttal to testify to the matter sought to be elicited in chief, that she yielded to the defendant's solicitations and acted as a prostitute at the hotel. Darlene Dayoe was also called and testified to a similar experience. Bertha Townsend was called and testified that she was employed at defendant's hotel, and he made the same proposition to her testified to by Mrs. Wilmott, Miss King, and Miss Dayoe, and she declined to accede to his wishes, and went up to her room that

evening, and found her clothes had been moved out of her room and into the room of a traveling man, and she took them and left the hotel.

Without reference to whether the evidence was properly rebuttal or not, it was clearly admissible in chief, especially in view of defendant's contention that there was no evidence that his intention was that Mrs. Wilmott "should engage in prostitution or other immoral practices." The admissibility of evidence of other transactions showing intent has been fully considered by this court. Withaup v. United States, 127 Fed. 530, 62 C. C. A. 328; Olson v. United States, 133 Fed. 849, 67 C. C. A. 21; Exchange Bank et al. v. Moss, 149 Fed. 340, 79 C. C. A. 278; Thomas v. United States, 156 Fed. 897, 84 C. C. A. 477, 17 L. R. A. (N. S.) 720; Schultz v. United States, 200 Fed. 234, 118 C. C. A. 420. In view of these authorities it seems entirely a work of supererogation to cite those from elsewhere. Nor do we find anything in People v. Molineux, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193, in conflict with our previous rulings. In that case it is said:

"Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish: * * * (2) intent; * * * (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others."

[6, 7] It is the settled law that the determination of the order of the evidence is in the discretion of the trial court, and even if the court erred in holding this evidence was admissible in rebuttal, rather than in chief, it was a matter wholly within its discretion, and no exception to it is of any validity; but after the government had closed in rebuttal, when the first witness was called in surrebuttal, the court said:

"I think the record may show, at the close of the testimony of the plaintiff in rebuttal, that counsel for the defendant are informed that—to the end the answer to the testimony of the witnesses, King, Dayoe, Wilmott, and Townsend may be with continuity, if they desire, the case is fully open for the answer of the defendant, as fully as if the plaintiff had just closed his original case, without regard to what has been offered. I think counsel understands what I mean."

Even if there was error committed in admitting the evidence of the witnesses King, Dayoe, and Townsend in rebuttal, rather than in chief, the opportunity given the defendant by the court was ample to rectify any error which may have been made.

[8] By numerous assignments of error the defendant contends that the court erred in permitting a cross-examination of the defendant beyond the limitations of the examination in chief. Rule 24 of this court (188 Fed. xvi, 109 C. C. A. xvi) provides:

"Briefs.

"1. The counsel for the plaintiff in error * * * shall file with the clerk of this court, at least forty days before the case is called for argument, twenty copies of a printed brief, one of which shall, on application, be furnished to each of the counsel engaged upon the opposite side.

"2. This brief shall * * * contain, in order here stated: * * * Second. A specification of the errors relied upon, which in cases brought up-

by writ of error, shall set out separately and particularly each error asserted and intended to be urged. * * * Third. A brief of the argument, exhibiting a clear statement of the points of law or fact to be discussed, with a reference to the pages of the record. * * *

"4. * * * Errors not specified according to this rule will be disregarded; but the court at its option, may notice a plain error not assigned or specified."

No specification of errors appears at all in the brief for the plaintiff in error, and there is no reference at all to the pages of the record where the alleged errors can be found. This alone is sufficient to warrant the affirmance of this case on these points. City of Lincoln v. Sun Vapor Street Light Co. of Canton, 59 Fed. 756, 8 C. C. A. 253; Orr & Lindsley Shoe Co. et al. v. Needles et al., 67 Fed. 990, 994, 15 C. C. A. 142, 147; Chicago Great Western Ry. Co. v. Egan, 159 Fed. 40, 46, 86 C. C. A. 230; Northwestern Steam Boiler & Mfg. Co. v. Great Lakes Engineering Works, 181 Fed. 38, 44, 104 C. C. A. 52; Illinois Central R. Co. v. Nelson, 212 Fed. 69, 75, 128 C. C. A. 525, 531; Whitfield v. Krawza, 214 Fed. 83, 130 C. C. A. 523; Colorado Yule Marble Co. v. Collins, 230 Fed. 78, —— C. C. A. ——.

All the evidence has been carefully read, examined, and digested, and leaves no room for doubt as to the defendant's guilt. It has been said:

"Under such circumstances only some glaring and obviously harmful error would justify a reversal." Myers v. United States (Circuit Court of Appeals, 2d Circuit) 223 Fed. 919, 926, 139 C. C. A. 399, 406.

See Rev. St. §§ 1011, 1025 (Comp. St. 1913, §§ 1672, 1691).

There has existed in this court ever since Resurrection Gold Min. Co. v. Fortune Gold Min. Co., 129 Fed. 668, 64 C. C. A. 180, and Balliet v. United States, 129 Fed. 689, 64 C. C. A. 201, a difference of opinion between the judges of this court as to the latitude to be allowed on cross-examination and what constitutes a reversible abuse of discretion on the part of the trial court in permitting a cross-examination beyond the scope of the examination in chief. That difference still exists among the judges to whom this case was submitted, and we are thus unwilling to exercise the option to consider these questions, where they have not been raised as required by our rules. Some other questions are sought to be raised, but they are either wholly without merit or covered by the point just considered.

The case is affirmed.