## KELLOGG v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. November 25, 1903.)

No. 30.

**1. MAILS—FRAUDULENT USE—INDICTMENT.**

Where an indictment for using the mails for the purpose of furthering a scheme to defraud, in violation of Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696], alleged that said scheme and artifice was to be effected by opening correspondence and communication with persons sought to be defrauded by means of the post office establishment of the United States, etc., an objection that the indictment was insufficient for failure to allege that the use of the mails was part and parcel of the scheme was not well taken.

**2. SAME—INTENTION—BENEFIT TO ACCUSED.**

In a prosecution for violating Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696], prohibiting any person to further any scheme to defraud by opening communication with persons to be defrauded by means of the United States post office, the defendant's intention to obtain a benefit by the alleged fraud, or to convert the money obtained thereby to his own use, is not an element of the offense.

**3. SAME—DUPLICITY.**

In a prosecution for using the United States mails to further a scheme to defraud, in violation of Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696], an indictment charging that the scheme was to be effected by opening correspondence or communication with those persons by means of the post office, "and" by inciting them to open correspondence with a certain concern, was not objectionable for duplicity.

**4. SAME—EVIDENCE.**

Where a scheme to defraud was dependent on the use of the mails for its success, and the evidence showed such a wholesale use of the mails that an intelligent mind could reach no other conclusion than that such use was contemplated by the persons originating the scheme from the beginning, the evidence was sufficient to establish that the use of the mails was a parcel of the alleged scheme, though no witness testified to such fact directly, and it appeared that some of the communications between the swindlers and their victims were exchanged without the use of the mails.

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon writ of error to review a judgment of conviction against defendant for violation of section 5480, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3696].

A. J. Ross, for plaintiff in error.

Wm. Ford Upson and Ernest E. Baldwin, for the United States.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The relevant parts of the statute read as follows:

"If any person having devised or intending to devise any scheme or artifice to defraud, * * * to be effected by either opening or intending to open correspondence or communication with any person, whether resident within

¶ 1. Matter relating to frauds and counterfeiting as nonmailable, see note to Timmons v. United States, 30 C. C. A. 86.

or outside of the United States, by means of the post office establishment of the United States, or by inciting such other person or any person to open communication with the person so devising or intending, shall, in and for executing such scheme or artifice or attempting so to do, place or cause to be placed, any letter, packet, writing, circular, pamphlet, or advertisement in any post office, branch post office, or street or hotel letter-box of the United States, to be sent or delivered by the said post office establishment, or shall take or receive any such therefrom, such person so misusing the post office establishment shall, upon conviction, be punishable by a fine of not more than five hundred dollars and by imprisonment for not more than eighteen months, or by both such punishments, at the discretion of the court." Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696].

It is apparent that the offense covered by the statute is the misuse of the post office. To constitute the offense the defendant must "use" the post office, either by sending or receiving mail matter therefrom. Such use must be in and for executing or attempting to execute a certain scheme or artifice. Such scheme or artifice must be one to defraud, and also one to be effected by opening or intending to open correspondence, etc., as above set forth.

The first assignment of error raised by the defendant is that the two counts under which he was convicted are bad because they wholly fail to allege that the use of the mails was part and parcel of the alleged scheme. Various authorities are cited, which need not be discussed; no doubt they accurately set forth the law applicable to the concrete cases with which they are concerned. It will be sufficient to ascertain what this indictment alleges, and it will be necessary to examine only the first count. The indictment is constructed in the intricate and archaic manner which still characterizes criminal pleadings. It is to be hoped that there will come a time when such documents will be expressed in plainer and more intelligible language. Analysis of the first count discloses the following averments against the defendant:

That "James B. Kellogg * * * [the names of other persons united with him in the scheme are omitted from quotation] on January 3, 1897, * * * unlawfully, willfully, and knowingly did place in the post office of the United States, to be sent and delivered by the said post office establishment, a letter and packet directed to * * *, which letter and packet contained a * * * a book [entitled] 'Sixth Annual Statement of Dean's Safe System.'"

That Kellogg placed this letter and package in the post office "in and for executing and attempting so to do a scheme and artifice to defraud which he had devised."

That Kellogg and others named heretofore (in this district), "and prior to the 3d day of January, 1897, * * * carrying on business under the style and corporate name of the E. S. Dean Company, as stockbrokers, had devised a scheme and artifice to defraud by inducing and procuring the sending and intrusting of moneys to them, under that style and name, by divers other persons for investment and employment thereof in trade and commerce for the use and benefit of the several persons who should so send and intrust such moneys, which inducement and procuring were effected under and by means of false, fictitious, and fraudulent statements and representations made

by said accused, and known to them to be thus false, fictitious, and fraudulent, relating to the past successes, present status and conditions, and the prospects of the E. S. Dean Company and its undertakings."

That "said scheme and artifice was to be effected by opening correspondence and communication with those persons [i. e., the divers other persons whose money was to be sent] by means of the post office establishment of the United States, and by inciting them to open correspondence with the said E. S. Dean Company by means of said post office establishment."

The count sets forth copious excerpts from the book, and avers that they were false, and known to be false when made.

The second count contains an averment, in the same words used in the first count, that the "said scheme and artifice was to be effected by opening correspondence and communication with those persons by means of the post office establishment of the United States," etc.

From this analysis of the indictment it will be apparent that this first assignment of error is wholly without merit, and requires no further consideration.

Defendant further contends that the first count is insufficient and void for the additional reason that there is no allegation of an intention on the part of the accused to convert the moneys obtained to their own use. In support of this contention the following cases are cited: U. S. v. Flemming (D. C.) 18 Fed. 907; U. S. v. Hoeflinger (D. C.) 33 Fed. 469; U. S. v. Wootten (D. C.) 29 Fed. 702; U. S. v. Durland (D. C.) 65 Fed. 408, affirmed in 161 U. S. 306, 16 Sup. Ct. 508, 40 L. Ed. 709. In them are found expressions apparently sustaining defendant's contention, but in none of them did the question here presented arise; the indictments in all of them charged an intention to convert to the use of the accused, and the court was solicitous only to see that the proofs sustained the allegations. In U. S. v. Beach, 71 Fed. 160, the point was raised, and the District Judge held that "no scheme or artifice which lacks this intent can be within the prohibition of the act." The reasoning by which this conclusion is reached is unpersuasive. The opinion, in the first place, enunciates a proposition in which we fully concur:

"If we could solve the question upon any meaning of the word 'defraud,' it would be difficult to say that 'lucri causa' is an element of the offense. Fraud may be only an artifice to deprive another of his right, without gain to the person practicing it. In the analogous cases of cheating and swindling it is doubtful whether gain to the wrongdoer is an essential element."

The opinion next examines offenses expressly enumerated in the statute; e. g., the selling, etc., of counterfeit coin, the "sawdust swindle," the "counterfeit money fraud," etc. In these there is an element of gain to the offender, and, on the principle of noscitur a sociis, the conclusion is reached that the words in the first clause, "any scheme or artifice to defraud," must be taken to mean any scheme or artifice of the general character of those specified in the act. "The general language of the act," says the opinion, "must be limited to such schemes and artifices as are ejusdem generis with those named." The difficulty with this argument is that the concrete

cases mentioned in the section are, all of them, amendments which have been inserted subsequently to its passage, viz., in 1889. Act March 2, 1889, c. 393, § 1, 25 Stat. 873. In its original form it enumerated only "any scheme or artifice to defraud." There was nothing then in the section when originally passed (Act June 8, 1872, c. 335, § 1, 17 Stat. 323) to require a restriction of this plain language, and it is not to be inferred that, by the insertion of a casus omissus by way of amendment, Congress intended to change the meaning of the words it had already employed to designate an offense. Milby v. U. S., 120 Fed. 1, 57 C. C. A. 21. Since Congress did not make the benefit of the wrongdoer an element, it would seem to be judicial legislation for the courts to require such benefit to be alleged and proved.

It is next contended that the first and second counts are also bad because of duplicity. The language of the statute is "to be effected by opening or intending to open correspondence * * * with any person by means of the post office * * * or by inciting such other person or any person to open communication," etc. The indictment charges that the scheme "was to be effected by opening correspondence or communication with those persons by means of the post office, * * * and by inciting them to open correspondence with said E. S. Dean Company," etc. This point was presented on demurrer, and overruled. We entirely concur in the opinion then filed. "When the scheme is to be carried out by opening correspondence through the mails, almost of necessity it includes the invitation and incitement to a response by correspondence through the mails. The deposit of such a letter, which thus opens correspondence and invites a reply, is certainly only a single offense. The averment in the indictment that the scheme to defraud was intended to be carried out by opening correspondence, and inciting others to correspond in reply, does not import necessarily anything more than this, and is therefore not subject to the objection of duplicity."

It is further contended that the evidence showed that the use of the mails was not part and parcel of the alleged scheme. This point also is wholly without merit. It is true that no one testified to a formal declaration by the accused and those associated with him in the swindle that they proposed to use the mails to carry out their scheme, but no such direct proof was required. The scheme testified to was so dependent upon the mails for its success, and the evidence showed such a wholesale use of them, that an intelligent mind could reach no other conclusion than that such use was from the beginning contemplated by the persons who concocted the scheme. The circumstance that some of the communications between the swindlers and their victims were exchanged without the use of the mails at interviews with so-called "agents" is wholly immaterial.

Finally it is contended that the trial court erred in admitting in evidence a decree of the court of chancery in the state of New Jersey appointing a receiver of the E. S. Dean Company. The argument in support of this assignment of error is based entirely on the proposition that one of the essential elements of the offense was the intent of the accused to convert the moneys received by them to their own use.

Since we have shown that this proposition is erroneous, it is unnecessary to consider the argument based upon it. We find no error in the trial.

The judgment is affirmed.