# RUMBLE v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1906.)

No. 1,144.

**1. INDICTMENT—MOTION TO QUASH—MISJOINDER OF COUNTS.**

It is not error for a court to deny a motion to quash an indictment because of a misjoinder of counts, where the district attorney elects to proceed on one count and enters a nolle prosequi as to the others.

**2. POST OFFICE—USE OF MAILS TO DEFRAUD—INDICTMENT.**

An indictment under Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696], for using the mails to defraud, is not demurrable because the letter set out therein and charged to have been mailed by defendant in carrying out his alleged scheme to defraud does not contain any of the representations which the indictment charges that it was defendant's scheme to make in letters sent through the mails; all that is necessary to constitute the offense being that the letter should have been mailed pursuant to the scheme to defraud and as a step in its execution.

[Ed. Note.—Nonmailable matter—Frauds and counterfeiting, see note to Timmons v. United States, 30 C. C. A. 86.]

**3. SAME—CRIMINAL PROSECUTION—EVIDENCE.**

In a prosecution under Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696], for using the mails to defraud, averments in the indictment of fraudulent representations made by the defendant by the use of the mails, made to characterize his alleged scheme to defraud, may be proved by the introduction in evidence of letters or circulars mailed by defendant other than the one set out in the indictment, and for that purpose a circular printed and sent out through the mails by an agent of defendant is admissible in evidence, where it is shown that it was known to and approved by defendant, that it contained copies of letters written by him, and that statements and representations therein made were based on those made by him to the agent.

[Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Post Office, § 85.]

**4. SAME—LETTERS.**

A letter written to defendant before the close of the transactions charged in the indictment, although not answered by him, was admissible in evidence, where it was shown that it was part of a larger correspondence between the parties, and taken in connection with such correspondence and the other evidence tended to show that representations charged in the indictment to have been made by defendant were false, and known by him to be so.

**5. SAME—RELEVANCY.**

Where a circular issued by an agent of the defendant in a criminal case containing false statements and representations was introduced in evidence on proof that it was submitted to and approved by defendant, and the agent testified that some of such statements were based on statements made to him by defendant, and that others were based on his own investigations, questions in cross-examination designed to show which of the statements were made by defendant were immaterial and irrelevant, and their exclusion was not prejudicial error.

**6. SAME—COMPETENCY.**

Where, on the trial of a defendant for using the mails to defraud, a witness testified that his father and himself purchased mining stock from defendant through correspondence sent by mail, that his father was 85 years old, and that the witness acted for him in the transaction, and conducted the entire correspondence, it was not error to permit him to testify that both his father and himself were induced to purchase the stock by representations made in letters received from defendant through the mails.

In Error to the District Court of the United States for the Northern District of California.

The plaintiff in error (defendant in the court below) was indicted under section 5480 of the Revised Statutes, as amended March 2, 1889 (25 Stat. 873, c. 393, § 1 [U. S. Comp. St. 1901, p. 3696]). This section, as far as applicable to this case, reads as follows: "If any person having devised or intending to devise any scheme or artifice to defraud * * * to be effected by either opening or intending to open correspondence or communication with any person, whether resident within or outside the United States, by means of the postoffice establishment of the United States, or by inciting such other person or any person to open communication with the person so devising or intending, shall, in and for executing such scheme or artifice or attempting so to do, place or cause to be placed, any letter, packet, writing, circular, pamphlet, or advertisement in any postoffice, branch postoffice, or street or hotel letter-box of the United States, to be sent or delivered by the said postoffice establishment, or shall take or receive any such therefrom, such person so misusing the postoffice establishment shall, upon conviction, be punishable by a fine of not more than five hundred dollars and by imprisonment for not more than eighteen months, or by both such punishments, at the discretion of the court. The indictment, information, or complaint may severally charge offenses to the number of three when committed within the same six calendar months; but the court thereupon shall give a single sentence, and shall proportion the punishment especially to the degree in which the abuse of the postoffice establishment enters as an instrument into such fraudulent scheme and device." The indictment, as found by the grand jury, charged the plaintiff in error with three separate offenses, contained in three separate counts. The plaintiff in error moved to quash the indictment and each count thereof, among other things, upon the ground that the alleged offense charged in the first count was consummated March 29, 1901, that the alleged offense charged in the second count was completed March 24, 1903, and that the alleged offense charged in the third count was consummated October 7, 1903, and that no two of said three alleged offenses were consummated in the same six calendar months, and on the ground of misjoinder of counts. The court upon the hearing of this motion ordered "that the motion to quash the indictment herein will be granted unless the government elects to proceed upon one count of the indictment." To this order the plaintiff in error duly excepted. Thereupon the United States Attorney elected to proceed upon the third count, and entered a nolle prosequi as to the first and second counts.

The third count of the indictment in substance charges that on the 1st day of January, 1901, at the city and county of San Francisco, in the state and Northern district of California, defendant had then and there devised a scheme and artifice to defraud one Frank T. Terry, of Milwaukee, Wis., Dix W. Smith, and John Bull, Jr., of Elmira, N. Y., composing the firm of Smith & Bull, and divers other persons; that this scheme to defraud was to be carried on and effected with the parties named, and with other persons whose names are unknown, by means of the post-office establishment of the United States, by inciting those persons to open a correspondence through the post-office establishment with the said George W. Rumble; that this use and misuse of the post-office establishment of the United States was a part of said scheme and artifice to defraud.

The scheme which is charged against the defendant in the indictment is substantially this: That the defendant devised and intended that he would write and send through the post-office establishment of the United States certain letters to the said Frank T. Terry, Dix W. Smith, John Bull, Jr., and divers other persons whose names are unknown, representing himself to be the secretary and general manager of the Sunset Mining Company, a corporation organized and incorporated under the laws of the state of California, and having a capital stock of $10,000,000, divided into 10,000,000 shares of the par value of $1 per share; that the Sunset Mining Company did a general mining and mine promoting business and owned 12 gold mines in

the counties of Butte, Shasta, and Siskiyou, Cal.; that as money makers these mines were rated among the best in the state of California, not excepting any mother lode property; that some of these mines were the "Amo," the "Amo Hydraulic," and the "Old Glory"; that, in addition to these mines, the Sunset Mining Company owned a gold dredge, styled "Modern Electric Dredge," which was being operated by the Sunset Mining Company in Butte county; that there had been found by the Sunset Mining Company in one portion of the alleged property known as the "Amo" mines, in addition to the free gold, thousands of tons of black, gold-bearing sand which assayed $500 to $800 per ton; that the defendant, Rumble, further devised that he should represent in his letters to these parties that all of the mining properties before mentioned were being actively and successfully worked by the said Sunset Mining Company, and were producing large quantities of gold and other precious metals; that by reason of the operations of these alleged mining properties by the Sunset Mining Company the company each month received large profits; that the net proceeds from such operations were so large that the Sunset Mining Company was able to and did declare and pay out of the surplus of said net proceeds a monthly cash dividend of 2 per cent. upon the par value of each share of the issued capital stock of the said Sunset Mining Company; that the defendant, Rumble, devised that he should falsely represent that if the said Frank T. Terry, the said Dix W. Smith, and John Bull, Jr., of the firm of Smith & Bull, and divers other persons, would purchase shares of the capital stock of the Sunset Mining Company, they, and each of them, would receive each and every month thereafter, out of the net proceeds derived from the working of the various alleged mining properties of the Sunset Mining Company, a dividend of 2 per cent. upon the par value of each of the shares so purchased by them, or any of them; that the defendant, Rumble, devised and intended that he should falsely and fraudulently represent to the above-named persons, and each of them, that the Sunset Mining Company had paid a monthly dividend of 2 per cent. every month since the month of February, 1894, out of the net proceeds of mining operations conducted by it; that during the year 1902 the gross proceeds derived by the Sunset Mining Company from its operation of the mine known as the "Old Glory" amounted to $62,784.50, while the expenses of such operations during the same year amounted to only $14,400.56; that the dividends paid during the said year to stockholders of the Sunset Mining Company out of the net proceeds derived from the mining operations conducted by said company in the "Old Glory" mine during that year amounted to $22,812.56; that, by reason of the proceeds derived from the mining operations in the "Old Glory" mine during the year 1902, the Sunset Mining Company obtained a surplus over and above the operating expenses and dividends of $25,571.49, and that the proceeds from the sale of treasury stock, together with the aforesaid surplus from the "Old Glory" mine, were used to acquire and equip other properties; that the defendant devised that he should falsely and fraudulently represent the value of the "Old Glory" mine to be $500,000, and that the value of the other properties belonging to the Sunset Mining Company was $500,000, and that the resources of the Sunset Mining Company, over and above all liabilities, on the 2d day of February, 1903, were $898,250.00; that the defendant, Rumble, made each of the representations aforesaid, to the parties named, by means of the post-office establishment of the United States of America, for the purpose of inducing them, and each of them, to purchase shares of the capital stock of the Sunset Mining Company; that the representations were false and fraudulent, and that the defendant at all the times mentioned in the indictment intended to convert to his own use any and all moneys which these persons might pay to the Sunset Mining Company in exchange for shares of the capital stock of said company and thereby defraud them; that at the time of opening the communication and the correspondence with these parties through the post-office establishment of the United States, and at the time of devising the scheme and artifice to defraud as aforesaid, the defendant, Rumble, well knew that all of the representations contained in the said letters were false and fraudulent; that in furtherance of the scheme and artifice to defraud,

to be effected as alleged in the indictment, the defendant did on the 7th day of October, 1903, at Oroville, in the state and Northern district of California, willfully, unlawfully, knowingly, and feloniously place and cause to be placed and deposited in the said post-office establishment of the United States as aforesaid, to be sent and delivered by said post-office establishment of the United States, a certain letter inclosed in a sealed envelope and stamped with a postage stamp of the United States, and addressed to Smith & Bull, Realty Building, Elmira, New York.

This letter is in the words and figures as follows, to wit:

"First Incorporated 1889.                    Chronicle Building, Suite 57 and 58.

[Pictorial Representation of
   Great Seal of California.]

"General Gold Mining.

"Operating and Promoting Both in United States and Europe.

"Mines: Butte, Shasta and Siskiyou Counties, California.

"Have Paid Monthly Dividends Consecutively Since February, 1894.

"Officers:

Ira A. Pease, President and Superintendent of Mines.
G. W. Rumble, General Manager and Secretary.
Frank Rogers, Consulting Director, Retired Miner.
Henry Armstrong, Consulting Director, Mining Engineer.
Haden Whitney, Banker, Chestnut and 13th Sts., Philadelphia, Pa.

"Sunset Mining Co. of California.

"California, U. S. A., Oct. 7, 1903.
"Wednesday,
"Oroville,
"Old Glory Mine.

"Messrs. Smith & Bull—Gentlemen: Referring to yours sept 28, which has reached me here, the mine is not working owing to labor troubles which I think was brought about by Mr. Aubury. who has done & is doing everything his ingenuity can devise to injure both yours truly & the S. M. Co. I have complained of him many times to the governer who being a politician of the same creed, pays no attention to the matter. The Oct. 1. dividends had to be skipped the first in 9 years. I am spending most of my time at the mine when I can get time on my return to S. F. I think I can satisfy you on all points.

"Truly yours,                                              G. W. Rumble."

To the third count the plaintiff in error interposed a demurrer upon the ground that said count does not state facts sufficient to constitute an offense under the statute, in this: that it does not set forth any letter deposited or mailed by the defendant through said post-office establishment containing any of the representations alleged in said count, and that said count fails to show that the defendant deposited in the post-office establishment of the United States any letter containing any of said alleged representations.

This demurrer was overruled by the court, and the plaintiff in error excepted. He then entered his plea of not guilty, and thereafter was tried before a jury, and found guilty of the offense as charged in the third count. The plaintiff in error moved that the judgment be arrested upon substantially the same grounds as set forth in the demurrer, which motion was overruled, and exception taken thereto.

There are divers assignments of error committed by the court in the admission of evidence, and numerous objections to the charge of the court and in its refusal to give instructions requested by the plaintiff in error.

W. H. H. Hart and Aylett R. Cotton, for plaintiff in error.

Robert T. Devlin, U. S. Atty., and Benjamin L. McKinley, Asst. U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge, after making the foregoing statement, delivered the opinion of the court.

1. The court did not err in denying the motion to quash the indictment; the United States Attorney having elected to proceed upon the third count and entered a nolle prosequi as to the other counts. The clause in the statute which permits the indictment to charge three offenses "when committed within the same six calendar months" only applies to the procedure in which the attorney shall prepare the indictment. It does not relate to the creation of the offense. The offense is created and perfectly described before this clause is inserted. It is evident that the plaintiff in error was not deprived of any essential right by the ruling of the court. In United States v. Nye (C. C.) 4 Fed. 888, 893, the court said:

"In all cases where there has been an improper number of offenses joined in an indictment, the court undoubtedly may, in its discretion, quash the indictment; but it is always addressed to the sound discretion of the court in a case of that character. It may, in its discretion, quash the indictment, or it may permit the prosecutor to nolle certain counts, or it may compel the prosecutor to elect which one he will proceed upon, so that the defendant shall in no sense be prejudiced in his defense."

2. Did the court err in overruling the demurrer to the third count of the indictment? The principal objections urged thereto are set out in the statement of facts. In Stokes v. United States, 157 U. S. 187, 188, 15 Sup. Ct. 617, 618, 39 L. Ed. 667, the court said:

"We agree with the defendant that three matters of fact must be charged in the indictment and established by the evidence: (1) That the persons charged must have devised a scheme or artifice to defraud. (2) That they must have intended to effect this scheme by opening or intending to open correspondence with some other persons through the post-office establishment, or by inciting such other person to open communication with them. (3) And that, in carrying out such scheme, such person must have either deposited a letter or packet in the post office, or taken or received one therefrom."

The contention of the plaintiff in error is that a letter which does not contain any of the representations which the count charges the scheme was to make in letters to be sent through the post office by the defendant could not be, in the language of the section, "in and for executing" such a scheme or artifice or attempting so to do, and could not be the third matter of fact which it is stated in Stokes v. United States, supra, must be charged in the indictment and established by the evidence to constitute an offense under that section. Neither that authority nor any others cited by plaintiff in error hold that, in order to bring the case within the provisions of the statute, the letter contained in the indictment must be such a one as would necessarily be effective in the execution of the scheme to defraud.

In United States v. Hoeflinger (D. C.) 33 Fed. 469, 471, it was claimed by the defendant that the indictment was defective because it was not alleged that the statements contained in the letter were false. The court held that this point was not well taken, and said:

"The offense described in the indictment consists in placing a letter in the mail in execution of a fraudulent scheme, previously devised, which is intended to be carried out through the agency of the post-office establishment. It is not essential that the letter written in aid of the scheme shall contain false statements. It can make no difference, therefore, as a matter of averment, whether the letter contained false statements or otherwise. The important question is whether a fraudulent scheme was concocted of the nature described in the indictment, and whether the letter in question was mailed in furtherance of that scheme."

In United States v. Loring (D. C.) 91 Fed. 881, 886, it was held that it is not necessary that the contents of letters charged to have been placed in a post office in pursuance of a scheme to defraud should show the fraudulent character of the scheme. In Durland v. United States, 161 U. S. 306, 315, 16 Sup. Ct. 508, 512, 40 L. Ed. 709, the court said:

"We do not wish to be understood as intimating that, in order to constitute the offense, it must be shown that the letters so mailed were of a nature calculated to be effective in carrying out the fraudulent scheme. It is enough if, having devised a scheme to defraud, the defendant with a view of executing it deposits in the post office letters which he thinks may assist in carrying it into effect, although in the judgment of the jury they may be absolutely ineffective therefor."

These authorities show that the indictment comes within the rule announced in the Stokes Case, upon which the plaintiff in error relies. But another complete answer upon this point will be found in the fact that the letter under discussion does contain one or more representations which are alleged in the indictment to be fraudulent.

The court did not err in overruling the demurrer. The conclusion we have reached also sustains the action of the court in refusing to grant the motion made in arrest of judgment upon the same grounds as set forth in the demurrer.

3. A careful reading of the entire testimony clearly shows that the plaintiff in error is guilty of the offense charged in the third count of the indictment, and it therefore necessarily follows that unless the court erred in the admission of the testimony which was objected to, in overruling objections to the testimony of witnesses, in charging the jury, or in refusing to give instructions asked for by the plaintiff in error, the verdict of the jury and judgment of the court must be sustained. Did the court err in admitting certain letters and circulars in evidence? There are numerous specific assignments of error upon these points, a majority of which have been separately and specifically discussed in the briefs of the respective counsel. It would serve no useful purpose to pursue the same lines in this opinion. We shall endeavor, however, in a general way to cover the objections made, and to state briefly the principles applicable thereto.

An objection is made to each of certain letters offered and admitted in evidence, upon the ground that "there is no charge in the third count of the indictment that the defendant ever mailed this letter, nor a charge that letters were mailed by the defendant, other than the letter a copy of which is contained in said count." It is admitted by the plaintiff in error that the letters may have been admissible to

show the intent as to whether he did or did not devise the alleged scheme, but it is claimed that they were not admissible as evidence of the making of representations by the plaintiff in error through the mail; and in their argument counsel say the objection "was to prevent the letters being considered as evidence of any representations." It will be observed that no such objection was specifically made; but, had it been made, it would not have furnished any valid reason for excluding that part of the letter. In all cases where a charge is made that the defendant made certain representations which are alleged to be fraudulent the government should be permitted to prove the fact that the representations were made either by the oral statements of the defendant or by letters written by him, or by circulars, pamphlets, or publications sent by him through the United States mails. It need not be shown that the oral declarations or interviews had with, or information personally obtained from, the defendant, were sent through the mails. As was said by the court in Kellogg v. United States, 126 Fed. 323, 326, 61 C. C. A. 229, 232:

"The scheme testified to was so dependent upon the mails for its success, and the evidence showed such a wholesale use of them, that an intelligent mind could reach no other conclusion than that such use was from the beginning contemplated by the persons who concocted the scheme. The circumstance that some of the communications between the swindlers and their victims were exchanged without the use of the mails at interviews with so-called 'agents' is wholly immaterial."

In Balliet v. United States, 129 Fed. 689, 693, 64 C. C. A. 201, 205, there is an extended discussion upon points directly applicable to this case. The court said:

"The letters and telegrams in question were principally written by the defendant himself. They show that he exercised absolute control over the affairs of the White Swan Mines Company, Limited, whose stock he was engaged in selling. They further showed the manner in which he conducted the business of that company, and the use that he made of the money which he received from the sale of its stock. Some of the letters also contained representations that were made by the defendant for the evident purpose of inducing the sale of its stock. The other exhibits consisted principally of reports made by the defendant to stockholders of the White Swan Mines Company, Limited, and articles which the defendant had composed and caused to be published in certain newspapers and periodicals. * * * In a word, the articles in question [like the letters in evidence in this case] were well calculated to excite the cupidity as well as to deceive credulous and ignorant people, thereby inducing them to invest their means in purchasing the stock which the defendant was engaged in selling. The testimony in the case also shows that the defendant had been exceedingly industrious in giving a wide circulation to these articles. * * * The case proceeded upon the theory that fraud was the gist of the offense charged in the indictment, and that it must be made to appear that the defendant's purpose from the beginning was to sell a worthless stock by means of false representations, or a stock which was less valuable than it was represented to be, and to appropriate the proceeds, or a part thereof, to his own use. This being so, we are of opinion that all of the exhibits above mentioned were properly received in evidence to develop the defendant's purpose. The jury were entitled to consider all of the defendant's acts and declarations in connection with the exploitation of the White Swan Mines, both before and after the letters mentioned in the indictment were deposited in the mail, for the purpose of determining with what intent the defendant had acted. In no other way could his purpose be established. Besides, the exhibits in question con-

tained so much of exaggeration, and were put forth in such a form, as though they contained well-authenticated items of news, and with such a reckless disregard of the truth as would fairly justify the inference that they were intended to deceive, and were acts done in furtherance of a scheme to defraud by means of the mail. We think the trial court would have erred had it excluded the several exhibits."

The authorities heretofore cited show that it was not necessary to set forth in the indictment all the letters written by the defendant. All the statute requires is that a letter in furtherance of the scheme should have been deposited in the mail. It is optional on the part of the pleader to include more if he so desires; but it is not incumbent upon him to do so in order to permit him to introduce them in evidence. In the present case the indictment fully states facts sufficient to enable the defendant to make preparation for his trial. It was wholly unnecessary to set out in the indictment the evidence which the prosecution intended to introduce in support of the charges made in the indictment. As was said in Stokes v. United States, supra:

"It is difficult to see, nor do the defendants suggest, what other allegations were necessary to define the offense with greater clearness or certainty, and it is impossible that they could have been misled as to the nature of the charge against them. The rules of criminal pleading do not require the indictment to set forth the evidence."

In addition to the points already discussed, special objection is made to exhibit 17, which is a printed circular prepared by Smith & Bull, who were induced to become agents for the sale of stock that the plaintiff was endeavoring to sell. It was prepared, signed, and distributed by Smith & Bull through the mails, and it is claimed that this circular was wholly irrelevant and inadmissible, and that the plaintiff in error could not be bound by any matter therein contained.

It may be admitted, for the purpose of this opinion, that, if the circular had been issued and circulated without the knowledge and consent of the plaintiff in error, he would not be bound thereby. Let us see what the facts are and what the law is, and remember that in the letters, written or printed, and sent through the mails by the plaintiff in error, he was trying to entrap the unwary and to secure money from them on the faith of a scheme glittering and attractive in form, yet unreal and deceptive in fact, and known to him to be such. The evidence of Mr. Bull given at the trial shows clearly that some of the information contained in the circular was derived from letters and circulars forwarded to the firm of Smith & Bull by the plaintiff in error, and from talks had personally with him. The circular itself discloses a number of printed communications over the signature of the plaintiff in error, which Mr. Bull testified were copied verbatim from original communications received from the plaintiff in error. The entire testimony shows that the plaintiff in error knew what was set out in the circular, that it was submitted to him, and that he examined it, indorsed, and approved it. In one of his letters he said, "Your new circular is thoroughly convincing to any one who is responsible, and is the best one I ever saw." The circular was therefore properly received in evidence.

In Commonwealth v. Eastman, 1 Cush. (Mass.) 189, 215, 48 Am. Dec. 596, the court, in discussing the question whether or not certain letters not written by the party were admissible, said:

"So far as these letters might have been shown by other proof to have been acted upon or sanctioned by the defendants, so far they would have been competent evidence."

It appears from the record that there was but one circular issued by Smith & Bull. The witness Bull in his testimony said:

"There was never but one statement issued over the firm name, and anything that is in there in the way of telegrams or letters was added to it afterwards. There was simply one statement issued by the firm."

The court first ruled that the circular would be admitted up to a certain page. Upon further testimony being given, and knowledge of the plaintiff in error being shown as to the added parts, the court admitted the entire exhibit. In this we see no error.

The plaintiff in error claims that the court erred in admitting in evidence the following letter:

"Oct. 29, 2. G. W. Rumble, Chronicle Bldg.—Dear Sir: Replying to yours of the 10th would say, we now have an opportunity to sell the 'Amo' mine for $1,500.00. If you want it at that price you can have it. * * *

"Very respectfully,                        Geo. H. Fuller."

The objection urged to this letter, in addition to others previously disposed of, is that it is not a letter written by the defendant, and is therefore wholly irrelevant and immaterial to the subject-matter under consideration. It will be conceded that a letter written to the defendant, which was not answered by him, would not be admissible in evidence as tending to show an implied admission on his part of the truth of the statements contained in the letter.

In Packer v. United States, 106 Fed. 906, 910, 46 C. C. A. 35, 39, the court said:

"It is also urged that the letter was admissible as a tacit admission by the accused of the truth of its statements; it having been proved that the accused did not reply to it. Admissions, of course, may be inferred from silence as well as from express statements, but it has been uniformly held by the courts that the failure to reply to a letter is not to be treated in a criminal or in a civil action as an admission of the contents of the letter."

But in the case under consideration, like the circular issued by Smith & Bull, the letter does not stand by itself. Mr. Fuller was a witness at the trial, and from his testimony it appears that prior to the time the letter in question was written there had been considerable correspondence between Rumble and himself as to the value of the Amo mine, of which Mr. Fuller was the president. From Fuller's testimony the fact appears that the Sunset Mining Company never had any interest whatever in the Amo mine; that Rumble at one time had an option thereon to purchase it, but gave it up and ceased work; that Rumble had stated to him that he had received from the working of the mine $214.95 and had expended $9,580.90. In a letter written by Rumble to this witness June 8, 1900, he said: "I have recently had two assays made of 'Amo' stuff; one was black sand which assayed 500 per ton." In another letter, dated August 22, 1901, Rumble said:

"After having tested the ground of the 'Amo' in every conceivable place and manner, I have come to the conclusion that it would be a losing deal to continue further work on it. * * * I have recently secured an option to

purchase Foster's entire property, also the property adjoining Foster's and the 'Amo,' which, together with the 'Amo' and what I have, would make about 1,000 acres. * * * Should I buy them all, I would make it into a sheep ranch and go to raising alfalfa on portions of it where it can be irrigated."

The letter under consideration purports to be a reply to a letter previously written by Rumble on October 10th, which letter was not offered in evidence, but it was stated by the witness that it had no reference to any sale of the stock of the Sunset Mining Company.

In the light of the facts disclosed by the testimony of Mr. Fuller, it is manifest that the plaintiff in error could not possibly have been misled to his prejudice. The facts of this case are in many respects different from those presented in Packer v. United States, supra, upon which the plaintiff in error relies. Here the letter was not written by one who claimed to have been defrauded, nor was it written after the transaction on which the charge against the plaintiff in error was based had closed.

The opinion in the Packer Case quotes with approval the language of the court, which we have heretofore cited, in Commonwealth v. Eastman, supra, and, among other things, says:

"The correspondence between Moody and the accused while the transactions evidencing the scheme to defraud were taking place was competent, because the letters were verbal acts constituting a part of the res gestæ. It was also competent because the letters from the accused were admissions of fact contained in them, and a response to the letters of Moody and the latter were necessary to a correct understanding of the scope and effect of the admissions."

All the letters tended to show the falsity of the alleged representations charged in the indictment to have been made by Rumble.

One other objection to the admissibility of another letter, Exhibit No. 55, will be noticed. This letter reads as follows:

"C. J. Haile, Fruit Grower. Vacaville, Cal., Nov. 18, 1901.

"Mr. F. E. Stone, Newkirk, Oklahoma, Ty.—Dear Sir: Owing to the recent death of my husband, I desire to realize on my Sunset Mining Co. stock, which pays 2% per month cash dividends. The company's price for their stock is now $1.50 per share. They inform me that it will be very much higher within the next twelve months. My stock cost me $1.00 per share. Enclosed I send you one of their circulars, which I got at their office yesterday. I can have the stock transferred to your name.

"Respectfully, Mrs. C. J. Haile."

The objection to this letter was that it was not shown that the defendant knew of its being written or sent, or had any connection with it. This objection would have been good if the objections raised were sustained by the facts. But the record shows that prior to the time this objection was made the witness was asked: "At whose dictation was this letter written? A. At Mr. Rumble's." She further testified that the plaintiff in error had envelopes and letter heads with the words, "C. J. Haile, Fruit Grower," similar to the one in evidence, printed on them. The following questions were then asked and answered:

"Q. Did you send out this letter with this circular attached to it at Mr. Rumble's request? A. Yes, sir. Q. Through the United States mail? A. Yes, sir."

In the light of what has been previously said, further comment is unnecessary.

4. Did the court err in overruling the objections to the testimony of the witnesses? There are many assignments of error upon these points. Several of them relate to the testimony of the witness Bull, and most of them are governed by the principles heretofore announced. It is claimed that the court erred in refusing to permit counsel to interrogate the witness upon cross-examination as to how much of what is contained in the circular issued by Smith & Bull said witness gained from his own investigations when at the Old Glory mine. The objection of the government that this was not in cross-examination was sustained by the court. It is true that this witness had stated in his examination in chief that the circular issued by his firm was based upon his own investigations, and also upon the representations made to him by the plaintiff in error, and that the government did not undertake to prove how much of it he gained by investigation and how much by information, and it was upon this ground that the court held the question not proper on cross-examination.

The real objection to the question is that it was wholly irrelevant and immaterial to enter into the field of metaphysics and endeavor to scale up the quantum of information he received from the plaintiff in error, or from other parties. The controlling point was that he received some of the information contained in this circular directly from the plaintiff in error, and that the circular as a whole was indorsed, sanctioned, and approved by the plaintiff in error.

With reference to the other objections to the testimony, it is only necessary to say that no error occurred in allowing this witness to state that he had sent a good many thousands of the circular in question through the mails, and that his firm had sold in the neighborhood of 4,000 shares of the Sunset stock at $2 per share, amounting in all to about $8,000. An examination of the indictment, in connection with the testimony, shows that these matters were material and relevant to the issues involved in this case.

It is argued that the court erred in permitting one P. S. Moore to answer the following question:

"Q. State whether or not the communications and correspondence which you and your father received through the United States post-office establishment induced you and your father to invest your money in the Sunset Mining Company's stock. State whether or not that is the fact? A. Yes, sir; that is the fact."

The contention of the plaintiff in error is that this witness cannot testify as to what induced his father to act. The record shows that his father was 85 years of age, and that he was disabled from attending the trial. The witness testified:

"Q. Now, Mr. Moore, I will ask you whether or not you personally attended to all of your father's business in reference to correspondence with Mr. Rumble and the Sunset Mining Company, and everything connected

with those affairs? A. I did. Q. You have personal knowledge of all of his connections with those matters? A. Yes, sir."

We are of opinion that the court did not err in admitting the testimony objected to.

5. The court did not err in refusing to give the several instructions requested by the plaintiff in error. The instructions in their entirety were intended to limit the jury to the consideration of only one letter, to wit, the letter set out in the third count of the indictment. This point was raised upon the sufficiency of the indictment, the admission of the circular prepared and circulated by Smith & Bull, and to certain letters. The instructions asked for were properly refused.

6. The objections to portions of the charge of the court are without merit, and have been heretofore disposed of. From an examination of the entire charge, it fully appears that the rights of the defendant were carefully explained to the jury in every particular, and the charge was in all respects proper, fair, and just.

The judgment of the District Court is affirmed.