### LEFKOWITZ et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. May 11, 1921.)

No. 164.

1. **Post office ☞49—Prosecution may show participation of all parties to scheme to defraud, though some are not defendants.**

   In a prosecution for using the mails in carrying out a scheme to defraud, though the evidence was not sufficient to connect some of the defendants with the use of the mails, either in intent or act, and they were dismissed from the case, the prosecution was entitled to show their participation in the scheme to defraud.

2. **Post office ☞49—Evidence admissible in prosecution for using mails to defraud.**

   In a prosecution for using the mails in prosecuting a scheme to defraud, it is competent to show every part of the business or the method of conducting it, calculated to shed light on the intent and purpose of its managers.

3. **Post office ☞49—Evidence admissible in prosecution for using mails to defraud.**

   In a prosecution for using the mails to defraud, by selling stock in a mining corporation organized in Arizona, with large capital stock, but no property of any known value, proof that the laws of Arizona gave no warrant of authority for the business defendants were conducting was competent, relevant, and material.

4. **Criminal law ☞858(2)—Permitting jury to take books of account in evidence not error.**

   Permitting the jury to take with them to their room books of account, which had been introduced in evidence in their entirety, *held* not error.

5. **Criminal law ☞721(5)—Argument of prosecutor that testimony is uncontradicted held proper.**

   In his argument to the jury a prosecuting attorney may properly emphasize the fact that testimony on certain points is uncontradicted, and

such argument cannot be construed as commenting on the fact that defendants failed to take the stand in their own behalf.

**6. Criminal law ⊗⇒829 (1)—Refusal of requested instructions not error, where their substance is given.**
    Refusal of requested instructions is not error, where their substance is given, though not in the same language in the charge of the court.

In Error to the District Court of the United States for the Southern District of New York.

Criminal prosecution by the United States against Harry Lefkowitz and Russell V. Stuart, and others. Judgment of conviction, and defendants named bring error. Affirmed.

The plaintiffs in error, together with one Louis Lefkowitz (brother to Harry Lefkowitz, plaintiff in error), William D. Steadman, and the United Magma Mines Company (a corporation of Arizona) were tried under an indictment containing six counts. The first five counts are under Criminal Code, § 215 (Comp. St. § 10385), and set forth a scheme to defraud on the part of all the accused, wherein, for the purpose of executing such scheme, the post office establishment of the United States was used in the manner proscribed by the statute. The sixth count rests on Criminal Code, § 37 (Comp. St. § 10201), and in ordinary form alleges a conspiracy to commit an offense against the United States, viz. the offense denounced by section 215, with due allegations of overt acts.

It is not necessary to describe the details of the scheme alleged and (as we think after perusal of the evidence) amply proven. It was a stockjobbing fraud of a very common kind. Some of the accused acquired mining rights contiguous to a well known and successful mine. They formed a corporation to take over these rights; the company to issue therefor stock of the nominal or par value of $2,500,000, and the corporation was given a name which not remotely suggested that of the contiguous successful and well-known mine. The defendant company's property was a "prospect" and nothing more. Louis Lefkowitz and Steadman remained in Arizona; Harry Lefkowitz came to New York City, associated himself with Stuart, and entered upon a campaign to sell and "make a market for" the corporate stock created as above set forth.

The evidence as to the character of the representations made, put into writing, and sent through the United States mail was such as to require the submission of the indictment to the jury, if such representations were shown to be part of a scheme and/or the fruit of the conspiracy formed (in respect of the conspiracy count) by a plurality of defendants, and charged in the indictment.

At the close of the prosecution's case the trial court ruled that there was "no direct evidence nor sufficient evidence to connect" Louis Lefkowitz, Steadman, and the corporation "with the intent to mail," and therefore directed a verdict in favor of these three parties, leaving the case to proceed against the present plaintiffs in error. Both were convicted upon all the counts, and they thereupon sued out separate writs of error.

Herbert C. Smyth, of New York City (Frederick W. Bisgood, of New York City, of counsel), for plaintiff in error Lefkowitz.

Phillip C. Samuels, of New York City (Elijah N. Zoline, of New York City, of counsel), for plaintiff in error Stuart.

Francis G. Caffey, U. S. Atty., of New York City (Benjamin P. DeWitt, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before ROGERS, HOUGH and MANTON, Circuit Judges.

⊗⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

HOUGH, Circuit Judge (after stating the facts as above). [1] It is to be noted that there was direct evidence from which any jury could find that all the defendants as originally indicted had formed a scheme or artifice to defraud and had conspired—i. e., agreed together —to devise such scheme or artifice. The trial court apparently felt that the testimony as to Louis Lefkowitz, Steadman, and the corporation failed to meet the requirements of Farmer v. United States, 223 Fed. 903, 139 C. C. A. 341. As to the correctness of this ruling we can express no opinion; but when at the close of the government's·case, the indictments were dismissed as to Louis Lefkowitz and Steadman, they ceased to be defendants for every purpose, and it could no longer be said, in respect of this indictment, that they were in danger of giving testimony against themselves.

Yet after such dismissal it remained just as true as it was before that they might have joined in devising the scheme or artifice complained of, while stopping short of the intent or act of using the mails in the execution thereof. The prosecution was entitled to show the formation and apprise the jury of the whole scheme, artifice, or conspiracy. It is not true· (as is here substantially contended) that failure to prove either the necessary intent or action in respect of the use of the mail as to some of the defendants eliminated from the conspiracy or fraudulent scheme those who did not happen to go the statutory length of using or causing to be used.the postal establishment of the United States in the execution of what all the defendants intended to accomplish, to wit, the defrauding of a portion of the public. Cf. Emanuel v. United States, 196 Fed. 317, 116 C. C. A. 137; Schwarzberg v. United States, 241 Fed. 348, 154 C. C. A. 228.

(1) It is complained that divers persons who, after suspicion had been excited, talked with Steadman and Louis Lefkowitz, were permitted to testify as to what these defendants said, and that after dismissal of indictment as to such defendants the court refused to strike out such testimony. No material or relevant statements of this kind were admitted as against any defendant except the one who had spoken to the witness. We emphasize "material or relevant," for it is always possible to magnify after conviction trivialities to which no one paid attention before the jury. The propriety of refusing to delete the testimony altogether we have sufficiently indicated above.

[2] (2) This scheme was carried on during the World War, and after the United States entered the same. The prosecution was permitted to show that the plaintiffs in error sought to sell some stock by informing the public that the proceeds of sales for a-definite time would be given to the American Jewish Relief Committee, thereby hoping to increase sales among some possible purchasers; also that said committee refused the proceeds of such sales, which were not returned to buyers. The complaint made about this is without merit. It was plainly a part of the stock-selling business and that business was itself the very scheme to defraud; it was competent to show every part and parcel of such business, or the method of conducting it, calculated to shed light upon the intent and purpose of its managers.

[3] (3) It is alleged as error that the court below permitted the prosecution to show the compliance or noncompliance of the corporate defendant with the various statutes of Arizona regulating corporations, and especially mining companies. These statutes are of such a nature that it might be urged that the method in which defendants sought to sell this mining stock was a criminal offense under the state law, or at all events would have been such offense if the sales had occurred within the jurisdiction of Arizona.

Both this point and the next preceding one are thought to find support in Marshall v. United States, 197 Fed. 511, 117 C. C. A. 65. We pointed out in Farmer v. United States, supra, 223 Fed. at page 911, 139 C. C. A. 341, that the Marshall Case was "sui generis"; there is nothing in the opinion to indicate that the wholesome practice of showing intent by a party's own acts was to be abrogated. And see Hammer v. United States, 249 Fed. 336, 161 C. C. A. 344. The history of the defendant company, and proof that the laws of its own state gave no warrant of authority for the business defendants were conducting, was competent, relevant, and material.

[4] (4) Certain books of account of the stock-selling business were put in evidence, and the jury was permitted to take them into the jury room. Complaint is now made that some requests for further instructions made by the jury to the court show that the jurymen derived what they conceived to be evidence from parts of or entries in these books, or one of them, upon which counsel for neither the prosecution nor defense had laid any emphasis. We think that this contention rests at best upon a supposition. Neither court nor counsel can know the methods by which a jury functions; we must take only the result.

In many parts of the country, either by practice or positive statute, juries are forbidden to mull over documentary exhibits in the jury room. Such is not the practice in this jurisdiction. The whole book was in evidence, and, assuming that the jury had a right to look at any part of it, they had a perfect right to examine it all, and to draw their own conclusions therefrom. While we cannot perceive in this instance any hardship upon the defendants, the only way to prevent what is said to have happened here is to carefully restrict the parts of the book put in evidence and seal up the portions not offered.

[5] (5) None of the defendants took the witness stand; nor did plaintiffs in error call as witnesses either Louis Lefkowitz or Steadman. The prosecuting attorney in summing up repeatedly said that various matters were uncontradicted. Then he remarked:

"There isn't a shred of evidence, there isn't a word of denial, that Stuart and Lefkowitz were partners. * * * Now, gentlemen, if it is not denied, it is there. Was it denied? It is not; is it?"

And again, on another subject, the attorney said:

"Is Winkelman the best man to testify as to whether the check was made out to R. V. Stuart? * * * Where is the check? The papers were turned over to Stiner. Where is Stiner? * * * Who is Stiner? Where is he?"

On both these occasions counsel for defense interposed objection, one attorney raising it thus:

"He [the district attorney] repeatedly refers to the failure of the defendants to produce evidence, and that is of course objectionable."

It is only objectionable to comment upon the failure of the defendant personally to testify; and if at the close of the whole case any given point stands uncontradicted, such lack of contradiction is a fact, an obvious truth, upon which counsel are entirely at liberty to dwell. We perceive nothing objectionable on the part of this prosecutor.

At another time the district attorney said to the jury, "I would like to ask Louis Lefkowitz what he did with" a certain sum of money. As above pointed out, when this remark was made, Louis Lefkowitz was no longer a defendant; he might have been called by either side, and we perceive neither impropriety nor force in the remark complained of.

[6] (6) Defendants preferred 43 requests to charge, and as to most of them the court refused to charge in the very words of the request, saying in substance that the matter had been covered in the colloquial charge. As was pointed out in Green v. United States, 240 Fed. 951, 153 C. C. A. 635, the court is never required to adopt the language of counsel; he may prefer, and usually does prefer, his own words.

It would not be useful to go over these requests in extenso; many of them, and some now pressed upon our attention, are drawn in the very words of leading cases, with the quotation marks omitted. But the sense and substance of every matter of any importance contained in these requests was either put to the jury as requested or covered in essence and substance by the colloquial charge. The theory of requests (whatever may be the practice) is to aid the jury, and we think that "perhaps the least amount of aid is rendered where the law is delivered in the form of copious extracts from judicial opinions in other cases." Hood v. Hood, 25 Pa. at 422.

The judgment is affirmed.