## GARVEY v. UNITED STATES.

(Circuit Court of Appeals. Second Circuit. February 2, 1925.)

No. 66.

Post office ⊕⏗49—Evidence held to sustain conviction for use of mails to defraud.

In prosecution for use of mails in execution of scheme to defraud purchasers of worthless stock in violation of Criminal Code, § 215 (Comp. St. § 10385), evidence *held* to sustain conviction, despite failure to identify particular communication contained in envelope described in indictment.

In Error to the District Court of the United States for the Southern District of New York.

Marcus Garvey was convicted of using mails for execution of scheme to defraud, and he brings error. Affirmed.

Garvey and others were indicted under Criminal Code, § 215 (Comp. St. § 10385), for having devised a scheme to defraud and for the purpose of executing the same, or attempting so to do, causing to be placed in and delivered by the post office establishment of the United States certain letters or circulars enclosed in postpaid envelopes.

The nature of the scheme as set forth in the indictment was an endeavor to persuade, especially colored men and women, to purchase stock in the Black Star Line, Inc., a corporation existing under the laws of Delaware and having for its purpose the acquisition and management of steamships, which vessels were ultimately intended to transport to Africa many colored men and much material, there to build up a greater country for the negro race.

The substance of indictment is that, while there center around Garvey other associations or corporations having for their object the uplift and advancement of the negro race, the entire scheme of uplift was used to persuade negroes for the most part to buy shares of stock in the Black Star Line at $5 per share, when the defendants well knew, notwithstanding florid representations to the contrary, that said shares were not and in all human probability never could be worth $5 each or any other sum of money.

The voluminous testimony shows at length great efforts on the part of Garvey to constitute himself a "leader of the colored race of the world," and he called himself at times the "provisional president of Africa"; his purpose being to promote solidarity among negroes by and through several organizations of his begetting quite different from the Black Star Line.

The matter may be summarized in the language of Garvey's counsel at this bar, thus: "Upon the record it is not open to the plaintiff in error to contend that the representations and promises made as to the success of the operation of the ships by the Black Star Line did not to some extent form part of the inducing cause" of the sale of the stock thereof.

But, adds the brief of counsel: "No one reading the record can fail to realize that the ship project was but a small part of the large scheme that roused the enthusiasm of Garvey and appealed to the hopes and aspirations of the thousands of his followers. No one can fail to be strongly impressed by the fact that the persons who contributed were more intent on the ultimate uplifting and salvation that was promised to the negro race of America than to the paltry profits that might be realized from the stock investment."

The persons indicted with Garvey were acquitted and Garvey himself convicted on one count. The effect of the conviction is that Garvey is declared to have been guilty of the scheme or artifice to defraud set forth in the indictment, and of having for the purpose of executing the same caused to be sent through the United States post office "a certain letter or circular inclosed in a postpaid envelope addressed to Benny Dancy, 31 West 131st street, New York City." Thereupon Garvey took this writ of error.

Kohn & Nagler, of New York City (George Gordon Battle and Isaac H. Levy, both of New York City, of counsel), for plaintiff in error.

William Hayward, U. S. Atty., and Maxwell S. Mattuck, Asst. U. S. Atty., both of New York City.

Before ROGERS, HOUGH, and LEARNED HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Justice to the community and rules of law combine to prevent courts or juries from looking upon the testimony in this case in the spirit sought to be aroused by the brief for plaintiff in error.

It may be true that Garvey fancied himself a Moses, if not a Messiah; that he deemed himself a man with a message to deliver, and believed that he needed ships for the deliverance of his people; but with this assumed, it remains true that if his gospel consisted in part of exhortations to buy worthless stock, accompanied by deceivingly false statements as to the worth thereof, he was guilty of a scheme or artifice to defraud, if the jury found the necessary intent about his stock scheme, no matter how uplifting, philanthropic, or altruistic his larger outlook may have been. And if such scheme to defraud was accompanied by the use of the mails defined by the statute, he was guilty of an offense under Criminal Code, § 215.

We need not delay to examine in detail the fraud scheme exhibited by practically uncontradicted evidence. Stripped of its appeal to the ambitions, emotions, or race consciousness of men of color, it was a simple and familiar device of which the object (as of so many others) was to ascertain how "it could best unload upon the public its capital stock at the largest possible price." Horn v. United States, 182 F. 721, at 731, 105 C. C. A. 163, 173. At this bar there is no attempt to justify the selling scheme practiced and proven; it was wholly without morality or legality.

This writ rests solely on an asserted failure to prove the "indictment letter" in the single count on which Garvey was convicted.

We pointed out in Hart v. United States, 240 F. 911, at 917, 153 C. C. A. 597, that Congress, by section 215, has made any fraudulent scheme a crime, if for the purpose of executing the same any letter, etc., be sent or received by post. The corollary is that in this case it was necessary for the prosecution to prove not only that there was a scheme to defraud, but to show that there was a communication sent through the mail to Dancy within the jurisdiction of the court for the purpose of executing or attempting to execute the same.

As was said in Lefkowitz v. United States (C. C. A.) 273 F. 664, certiorari denied 257 U. S. 637, 42 S. Ct. 49, 66 L. Ed. 409, in such a prosecution as this it is competent to show every part of the method of conducting the scheme that is calculated to shed light on the intent and purpose of its deviser. Some schemes have a relation to the use of the mails so plain that any court or juryman can take notice thereof; and so the general use of the mails may be established by showing that the success of the scheme depended on a wholesale utilization of the post. This is fully set forth in Kellogg v. United States, 126 F. 323, 61 C. C. A. 229. And in this case there was proven a widespread and wholesale use of the mails for the purpose of soliciting subscriptions to the worthless stock offered by Garvey to the public. The

connection between his scheme and the use of postal facilities was manifest, and this circumstance was proper for the consideration of the jury.

Starting with this, there was abundant proof of the style of "literature" used in falsely puffing the Black Star Line stock. It was directly proven that Dancy received through the mail an envelope addressed as in the indictment averred, that such envelope was like many similarly proven to have been mailed by Garvey's mailing agent, and bearing upon them the legend "Black Star Line, New York City."

It was also directly proven that Dancy received many communications not only from the Black Star Line but from other organizations with which Garvey was concerned, and that some of the letters thus received advised him to "invest more money in the Black Star Line"; and he did purchase some 50 shares. But there was no direct evidence as to what particular circular, letter, or the like came in the envelope identified by Dancy as having been sent to and received by him through the post, and mentioned in the indictment. It was further directly proven that Dancy had received through the post communications distinctly calculated to aid in executing the scheme to defraud; so that the point raised by this writ is that this evidence is insufficient to justify a conviction upon the single count before us, because there was no direct proof of what the envelope had contained.

To this we cannot agree; the circumstantial evidence is sufficient. The rule is elementary that any fact which becomes material in a criminal prosecution may as a rule be established by circumstantial as well as by direct evidence. 16 C. J. 762. So also is the rule fundamental that in arriving at their verdict a jury is not confined to considering the palpable facts in evidence, but it may draw reasonable inferences and make reasonable deductions therefrom. 16 C. J. 760. Consequently a conviction may well be had upon circumstantial evidence, although to warrant such conviction the proven facts must clearly and satisfactorily exclude every other reasonable hypothesis save that of guilt. United States v. Greene (D. C.) 146 F. 803, affirmed 154 F. 401, 85 C. C.

A. 251, certiorari denied 207 U. S. 596, 28 S. Ct. 261, 52 L. Ed. 357.

The only matter here not proven by direct evidence is that some particular circular or letter was inclosed in the envelope produced by Dancy—a man evidently both emotional and ignorant, whose caliber may be judged by the following excerpts from a cross-examination conducted by Garvey pro se:

"Q. You don't know whether they (letters or circulars) reached you through the mail or not; you just saw things about Black Star Line? A. I saw things about it?

"Q. Yes. A. I didn't saw things, I saw it in the letters.

"Q. Can you remember what you saw in the letter positively? A. I just told you I couldn't remember all; do you understand it? * * *

"Q. The letters that the district attorney showed you, they weren't the letters? A. They weren't the letters?

"Q. Yes. A. Yes, they were the letters.

"Q. And you don't remember what was in them? A. I can't remember all of them; I got so many letters I couldn't remember all the letters."

It is a reasonable inference that men regularly sending out circulars in envelopes do not send out empty envelopes; also, that one who received an empty envelope would remember the emptiness; and further and finally, that when Dancy identified the envelope and testified to letters and circulars so numerous that he could not remember all of them, the inference was justifiable that some or one of those documents came in the envelope. Which one was of no importance. The nature of the matter sent by mail is immaterial; it is the purpose inspiring the sending that brings the scheme deviser under national law, not the language of his communication.

Thus the circumstantial evidence justified the jury in finding that the envelope did not come empty to Dancy. We note that it is the language of the count that requires the envelope to have contained a letter or the like; so far as the statute goes, it would be quite possible so to use an empty envelope or a postal card blank except for address, as to satisfy the statute.

Judgment affirmed.